BEARD RESEARCH, INC. and CB Research & Development, Inc., Plaintiffs,

v.

Michael J. KATES, ASDI, Inc., Advanced Synthesis Group, Inc., Alan Blize, Garry Smith, Michael Wagaman, Stephen Jones, and Pfizer, Inc., Defendants.

Civil Action No. 1316–VCP.

Court of Chancery of Delaware.

Submitted: Feb. 2, 2009.
Decided: May 29, 2009.

R. Karl Hill, Esquire, Patricia P. McGonigle, Esquire, Seitz, Van Ogtrop & Green, P.A., Wilmington, Delaware, Attorneys for Plaintiffs.

John A. Elzufon, Esquire, Elzufon, Austin, Reardon, Tarlov & Mondell, P.A., Wilmington, Delaware, Attorneys for Defendants Michael J. Kates, Garry Smith, Michael Wagaman, Steven Jones, and Advanced Synthesis Group, Inc.

Barry M. Willoughby, Esquire, John W. Shaw, Esquire, Elena C. Norman, Esquire, Young, Conaway, Stargatt & Taylor, LLP, Wilmington, Delaware, Attorneys for Defendants ASDI, Inc. and Alan Blize.

## OPINION

PARSONS, Vice Chancellor.

This action is currently before me on Plaintiffs motion for sanctions for alleged spoliation of evidence. In particular, Plaintiffs contend that an ex-employee's laptop computer was irretrievably altered after a duty to preserve that evidence had arisen and that the ex-employee and his subsequent employers are responsible for that alteration. By way of remedy, Plaintiffs urge this Court to grant a default judgment in their favor on Counts I and II of their Complaint for tortious interference with business relations and misappropriation of trade secrets, respectively. Alternatively, Plaintiffs request an adverse inference that the destroyed evidence contained information that would favor their claims. Plaintiffs also seek imposition of attorneys' fees and costs. Defendants vigorously oppose the motion for sanctions.

For the reasons stated in this opinion, I decline to enter a default judgment, but grant in part and deny in part Plaintiffs' request that the Court draw an adverse inference based on the missing evidence. In addition, I order the ex-employee and his new employers to reimburse Plaintiffs for the reasonable attorneys' fees and expenses they incurred in prosecuting their motion for sanctions.

## I. BACKGROUND

### A. Parties

Charles Beard launched the eponymous Plaintiffs, CB Research & Development, Inc. ("CB") and Beard Research, Inc. ("BR"), to engage in chemical processing for the pharmaceutical industry. CB and BR offered chemistry outsourcing services, such as providing full-time equivalent chemists ("FTEs") for extended periods or for one-off projects involving custom synthesis of compounds. In late 2002, CB, BR, and Pfizer, Inc. ("Pfizer") executed a three-year contract for FTEs and custom synthesis work. In 2002, CB also was developing a catalog of compounds from which companies in the pharmaceutical industry could order material as needed. CB and BR have made a variety of claims against several former employees and their subsequent employers. One of these former employees is Dr. Michael Kates.

Kates left CB and BR and joined Defendant Advanced Synthesis Group, Inc. ("ASG"), and later Defendant ASDI, Inc. ("ASDI"). ASDI was formed in 1997 by Ronald Paloni, who is not a party to this action.[1] Since 2000, ASDI has functioned primarily as a "monomer store" for compa-

nies like Pfizer.[2] The "monomer store" is "a repository of intermediates for Pfizer chemists to call and ask for and then a certain amount is delivered to Pfizer within a 24-hour period of time."[3] ASG was formed in 2003 or 2004;[4] its business was to perform custom synthesis of chemical compounds and to sell chemical compounds through a catalog. ASDI provided management services for ASG.[5]

### B. Facts

In 1997, Kates joined CB.[6] In late 1999, Charles Beard formed BR, and Kates became a BR officer, director, and shareholder, as well.[7] In mid-2003 and while still employed at CB and BR, Kates purchased a Gateway laptop (the "Gateway" or the "laptop").[8] Kates used the laptop for business purposes.[9]

From 2003 to early 2004, relations between Kates and Beard deteriorated for reasons not relevant to this opinion. Phone records show that during this period Kates called Defendant Alan Blize approximately seventy times.[10] Although Blize currently is the CEO of ASDI, he previously worked at Pfizer as a "molecular broker"[11] where he managed Pfizer's

---

1. Defs.' Opening Br. in Supp. of Mot. for Summ. J. ("DSJOB") at 8, citing Dep. of Ronald Paloni ("R. Paloni Dep.") at 26. The briefing and argument regarding Defendants' Motion for Summary Judgment was conducted contemporaneously with this Motion. My rulings on the Motion for Summary Judgment are reflected in an Order dated March 31, 2009. See D.I. 488.

2. DSJOB at 8, citing R. Paloni Dep. at 35.

3. DSJOB at 8, citing Dep. of Michael Clark at 86.

4. DSJOB at 8.

5. Id., citing Ex. 1. ASG closed in the fourth quarter of 2005. Id.

6. KAB Ex. C, Kates Dep., at 35–36. "KAB" refers to the Answering Brief of Defendant

Michael Kates in Opposition to Plaintiffs' Motion for Sanctions for Spoliation of Evidence. "POB" and "PRB" refer to Plaintiffs' opening and reply briefs, respectively, on the same motion. Also, "AAB" is short for Defendants ASDI and ASG's answering brief on that motion.

7. KAB Ex. C at 43.

8. POB Ex. A, Kates Dep., at 585–86.

9. Id. at 585–86.

10. KAB at 19, citing Ex. S, Blize Dep., at 119, 123–26, 128–29, 136–37, 138–40.

11. DSJOB at 8, citing Blize Dep. at 7.

outsourced custom synthesis work, including the work performed by Plaintiffs.[12]

In or around December 2003, Kates took part in the formation of ASG with shareholders of ASDI.[13] Rather than taking an equity interest in ASG himself, however, Kates had shares listed in his wife's name, because Kates believed Beard was going to sue him.[14] In December 2003, Kates resigned from CB.[15] On February 13, 2004, Kates also resigned from BR.[16] Kates began working at ASG three days later,[17] and shortly thereafter, Pfizer terminated its contract with CB and BR. After Kates resigned from CB and BR, he continued to use the laptop at ASG and ASDI, which were in similar business segments as CB and BR.[18]

Sometime between December 2003 and March of 2004, Kates made a PowerPoint presentation to the ASDI board of directors, using the Gateway.[19] The purpose of the presentation was to demonstrate to ASDI what Kates could bring to the table.[20] The presentation included, among other things, information about custom synthesis and providing a catalog of compounds.[21] During the presentation, Blize claims he interrupted Kates and said:

Mike, your previous employer has a catalog of compounds. If you're bringing a catalog of compounds with you or you want to build another one, is there going to be any type of conflict IP [intellectual property]? Are we going to have any issues surrounding this set of compounds? Because you're coming from another company that also offers this component as far as their business model. . . . I don't need any issues.[22]

On May 4, 2005, CB and BR filed a Verified Complaint against Kates, ASDI, ASG, Blize, Dr. Garry Smith, Dr. Michael Wagaman, and Dr. Stephen Jones.[23] On June 21, 2005, CB and BR served their first set of interrogatories and requests for production of documents on Defendants. These requests sought documents kept in electronic form and specifically included email communications among Defendants.[24]

On October 31, 2005, Kates was laid off from ASG.[25] Kates avers he was angered by this development and, therefore, deleted all ASG data and files from the Gateway hard drive and then "emptied" the computer's trash or recycle bin.[26] Later, in December 2005, Kates claims the Gateway crashed, and he reformatted the hard

12. Id. at 8, citing Blize Dep. at 53–54.

13. Pls.' Ans. Br. in Opp'n to Defs.' Mot. for Summ. J. at 14, citing Dep. of Oksana Paloni at 44–45.

14. PRB Ex. G, Kates Dep., at 362–63.

15. KAB Ex. C at 70.

16. Id. at 71.

17. KAB at 8.

18. POB Ex. A at 584.

19. KAB Ex. C at 177–78.

20. PRB Ex. L, Blize Dep., at 151.

21. KAB Ex. C at 177–78. The Court infers from Kates's testimony that the information used in the ASDI presentation was stored on the Gateway.

22. PRB Ex. L at 155–56.

23. On September 15, 2005, Plaintiffs amended their complaint to add Pfizer as a Defendant, but have since settled with Pfizer.

24. POB Ex. B.

25. KAB Ex. C at 41–42.

26. KAB at 8, citing Ex. A, Kates Aff., ¶¶ 16–19.

drive and reinstalled system software.[27] Sometime between December 2005 and August 2006, the Gateway crashed a second time, according to Kates, and he again reformatted the hard drive and reinstalled system software.[28] Kates admittedly understood that reformatting the hard drive or installing a new operating system could "wipe[ ] out the old data."[29] In August 2006, Kates began his employment at ASDI.[30]

On May 23, 2006, Plaintiffs filed a Second Amended Verified Complaint (the "Complaint").[31] Six weeks earlier, Plaintiffs had filed a motion to compel.[32] On June 2, 2006, the Court entered an Order directing Defendants to respond to Plaintiffs' discovery, including various requests for documents.[33] On December 21, 2006, Plaintiffs filed a second motion to compel.[34] During argument on that motion, Plaintiffs requested direct access to the ASDI and ASG computer databases. In response, Defendants undertook, among other things, to conduct a search of the personal computer of Kates for documents and writ-ten communications to and from two different personal email accounts.[35]

Based on the second motion to compel, the Court directed Defendants' IT expert to meet with Plaintiffs to discuss the method and means of searching the computers and databases.[36] That meeting took place on June 8, 2007.[37] Plaintiffs objected to Defendants' use of Intelligent Solutions as their IT consultant on the ground that they were an affiliate of ASDI, and, therefore, not independent or disinterested. Nevertheless, Defendants continued to use the services of Intelligent Solutions.

Sometime in 2007, the Gateway crashed for a third time, and Kates attempted to reformat the hard drive and reinstall software as he had done before.[38] This time, Kates could not resuscitate the hard drive.[39] On September 18, 2007, counsel for Kates and the other Defendants asked Kates how to go about retrieving any emails sent from his personal computer, because Plaintiffs had requested such emails.[40] Kates responded: "The email[s] were sent from my personal computer.

---

27. *Id.* ¶ 19.

28. *Id.* ¶ 26.

29. POB Ex. A at 626.

30. KAB Ex. C at 523.

31. Having withdrawn certain of their earlier claims, Plaintiffs are pursuing five counts against the remaining Defendants. Count I alleges tortious interference with business relations against Defendants Blize, Kates, ASDI, and ASG. Count II alleges misappropriation of trade secrets against Defendants Blize, Kates, ASDI, ASG, Smith, Wagaman, and Jones. In Count III, Plaintiffs assert a breach of contract claim against Kates, Smith, Wagaman, and Jones. Count IV accuses Kates of breaching a fiduciary duty owed to Plaintiffs. And, Count V alleges that Blize, ASDI, and ASG aided and abetted that breach of fiduciary duty.

32. D.I. 52. On March 8, 2006, Seitz, Van Ogtrop, & Green, PA, substituted its appearance for Plaintiffs' prior counsel. *See* D.I. 49.

33. D.I. 76.

34. D.I. 130.

35. POB Ex. C at 17.

36. *Id.* at 22–23. Defendants elected to use as their IT consultant, Intelligent Solutions, a company in which Defendant Blize, and Ronald and Oxana Paloni, the principal shareholders of Defendant ASDI, owned a controlling interest. *See* POB Ex. D at 25–29; POB Ex. E at 26–28.

37. POB at 8.

38. KAB Ex. A ¶ 21.

39. *Id.*

40. KAB Ex. I.

However, when I was laid off from [ASG], the computer was reformatted. There are no emails of any kind on the computer. The computer at this point doesn't even function." [41] After determining that Kates still had the computer, Defendants' counsel warned: "Don't trash it." [42]

On October 2, 2007, Plaintiffs again unsuccessfully requested access to the Gateway. [43] On October 11, 2007, Defendants' counsel sent a letter to CB's counsel noting that Kates, Smith, and Wagaman indicated there was nothing on their personal computers and further advising them that access to any computer would require a Court order. [44]

On or about December 11, 2007, Kates gave his Gateway to Scott Biggers at Intelligent Solutions and asked Biggers to see if he could fix it. [45] Intelligent Solutions served as ASDI's in-house technology support and, as noted above, also was retained to provide litigation support to Defendants for the electronic discovery in this case. Biggers said that he could not fix the hard drive or even get it to "spin"; he also could not make a "ghost" copy of the drive. [46] Biggers then ordered and installed a new hard drive, on which he installed a new operating system and software. [47] Biggers recalls returning the Gateway's original hard drive to Kates. [48]

As for what happened to the original hard drive, Kates swore that:

> At this time, I still do not have a specific recollection of the hard drive being returned by Mr. Biggers but I have no evidence to prove that he is wrong and upon reflection and based on the discussion with Mr. Biggers it is likely that the hard drive was returned to me.... [W]hile I have no independent recollection of doing it, I can only conclude that I discarded the original hard drive at or about the time Scott returned it to me or very shortly thereafter. [49]

A few months after Biggers installed the new hard drive, it too stopped working. [50] Sometime in April or May 2008, Kates removed the new hard drive and put it in a drawer. [51]

On July 9, 2008, Plaintiffs filed a third motion to compel requesting that Kates's laptop be turned over to them so that it could be searched by Plaintiffs' IT expert. [52] Argument on the third motion to compel was set for July 24, 2008. On July 23, 2008, Kates received a call from his counsel advising that he probably would have to produce the laptop the next day. [53] Kates retrieved the computer's hard drive from a desk drawer and reinstalled it. [54] Kates then "defragmented the hard drive and computer" [55] before turning them over to his counsel on the morning of July 24. [56]

41. *Id.*

42. *Id.*

43. *See* POB Ex. F.

44. KAB Ex. J.

45. KAB Ex. A ¶ 22.

46. AAB Ex. 7, Biggers's Aff., ¶¶ 4–5.

47. *Id.* ¶¶ 4–5.

48. KAB Ex. K ¶ 7.

49. KAB Ex. A ¶¶ 31, 33.

50. KAB Ex. C at 611–14.

51. *Id.* at 617.

52. D.I. 347.

53. POB Ex. A at 589, 620.

54. *Id.* at 617, 620–21.

55. POB at 9, citing Ex. A at 632.

56. KAB Ex. C at 585.

As Defendants expected, the Court ordered the laptop produced later that same day.

On July 25, 2008, the Gateway was delivered to Plaintiffs' IT expert, eVestigations, Inc. ("EVI") for a forensic investigation after which Paul Herrmann, President of EVI, prepared a report. The report includes a claim that on July 22, 2008 a PowerPoint presentation with the file name "Pharmaceutical_Research_Services_KLH_FINAL_01312008.ppt" was deleted and sent to the recycle bin.[57] The file was not recoverable. Herrmann also found that more than 11,000 files were deleted of which at least 1,062 files had been on the hard drive as of May 3, 2008, but were no longer recoverable. One had a file name "ASDI_Pfizer_Proposal_Pf1000AN[1].doc." [58]

### C. Procedural History

On October 6, 2008, BR and CB filed a Motion for Sanctions for Spoliation of Evidence (the "Motion") against Kates, ASG, and ASDI. The Motion seeks entry of a default judgment against Kates, ASDI, and ASG, or, in the alternative, an adverse inference against them based on the intentional destruction of relevant evidence. Plaintiffs also urge the Court to require those Defendants to reimburse Plaintiffs for their attorneys' fees and expenses in prosecuting the Motion. On February 2, 2009, I heard argument on the Motion, and from March 9–13, 2009, I held a trial on the merits of the underlying claims. During the pretrial conference on March 4, 2009, I advised the parties that I would be denying the Motion to the extent it sought

entry of a default judgment, but would grant an adverse inference to a limited extent and award Plaintiffs their attorneys' fees and expenses in connection with the Motion. This memorandum opinion formalizes those rulings and sets forth the reasons for them in greater detail.

### D. Parties' Contentions

Plaintiffs contend that the destruction of Kates's computer constitutes spoliation of discoverable material in the face of a duty to preserve potentially relevant evidence, and that Kates, ASG, and ASDI are responsible. Plaintiffs urge this Court to grant default judgments in their favor on Counts I and II of the Complaint or, alternatively, to draw an adverse inference that the destroyed evidence contained information that would support Plaintiffs' claims. Plaintiffs also seek imposition of attorneys' fees and costs.

Defendants oppose the Motion for several reasons. First, Kates argues that, despite the actions he took with respect to the laptop, literally on the eve of having to turn it over to Plaintiffs for inspection, he did not intentionally try to deprive Plaintiffs of the opportunity to view the hard drive. Kates notes that he already had deleted files by November 2005. Moreover, "[t]o the extent any files from 2003–04 might have existed, these files were not and could never have been present on the hard drive installed in December 2007." [59] According to Kates, the acts he took in 2007 and 2008 before the July 24 hearing were performed with an intent to keep the

---

**57.** POB Ex. L at 2. According to Herrmann's report, on July 23, 2008 at 9:19 p.m., the hard drive was defragmented, allegedly making recovery of the deleted data difficult or impossible. *Id.* On July 24 at 5:34 a.m., a "disk cleanup" program was run, which deleted the contents of the computer's recycle bin, inter-

net cache, and other temporary storage areas. *Id.*

**58.** *Id.*

**59.** KAB at 20.

"computer operational." [60]

Second, Kates, ASG, and ASDI argue that there is no evidence that any supposedly destroyed emails ever existed in the first place; thus, there can be no prejudice to Plaintiffs. Likewise, ASDI and ASG contend that while Kates was employed at CB and BR, he downloaded everything he had onto CB's computer network, so CB already should have whatever information was on the Gateway from that period.[61] Third, ASDI and ASG maintain that even if evidence of spoliation exists, no spoliation can be attributed to ASDI or ASG. Fourth, ASDI and ASG assert that the reason Kates deleted information on the eve of turning the laptop over was because he was concerned about embarrassing content on his Gateway that bears no relation to this litigation.

## II. ANALYSIS

### A. Did Kates, ASDI, and ASG Comply with Their Obligations to Preserve Relevant Evidence?

■ A party in litigation or who has reason to anticipate litigation has an affirmative duty to preserve evidence that might be relevant to the issues in the lawsuit.[62] Whether a person has reason to anticipate litigation depends on whether the "facts and circumstances ... lead to a conclusion that litigation is imminent or should otherwise be expected." [63] A court may sanction a party who breaches this duty by destroying relevant evidence or by failing to prevent the destruction of such evidence.[64]

■ The focus of Plaintiffs' pending Motion is on Kates's Gateway laptop and the original and substitute hard drives for that computer. Plaintiffs specifically identified the laptop as a likely source of evidence relevant to their claims at an early stage in this litigation. Indeed, by October 2007, Plaintiffs explicitly requested production of the laptop. Defendants, however, refused to comply with that request unless they were ordered by the Court to do so.[65] Whether or not Defendants' position in that regard was substantially justified, Kates, ASDI, and ASG knew as of October 2007, at the latest, that Plaintiffs believed the laptop contained relevant information. In those circumstances, each of those three

60. *Id.*

61. AAB at 3.

62. *See Triton Constr. Co. v. E. Shore Elec. Servs. Inc.*, 2009 WL 1387115, at *8 (Del.Ch. May 18, 2009); *Acierno v. Goldstein*, 2005 WL 3111993, at *6 (Del.Ch. Nov.16, 2005); *see also Brandt v. Rokeby Realty Co.*, 2004 WL 2050519, at *11 (Del.Super.Sept.8, 2004) ("A party, anticipating litigation, has an affirmative duty to preserve relevant evidence."); *Positran Mfg., Inc. v. Diebold, Inc.*, 2003 WL 21104954, at *2 (D.Del. May 15, 2003) (citations omitted); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y.2003).

63. *The Sedona Guidelines: Best Practice Guidelines & Commentary for Managing Information & Records in the Electronic Age* ("*Sedona Guidelines*") 40 n. 1 (2004), *available at* http://thesedonaconference.org/content/miscfiles/TSG9_05.pdf; *see also id.* at 40 (citing numerous federal cases) ("An organization's information and records management program should anticipate circumstances that will trigger the suspension of normal destruction procedures.").

64. *See Triton*, 2009 WL 1387115, at *8; *Positran*, 2003 WL 21104954, at *2.

65. In October 2007, Defendants Kates, ASDI, and ASG were represented by the same counsel, John Elzufon. In April 2008, the firm of Young, Conaway, Stargatt & Taylor LLP entered an appearance as co-counsel for all Defendants. At some point, however, it appears that Mr. Elzufon continued representing ASG, Kates, Wagaman, Jones, and Smith, but Young Conaway began representing ASDI and Blize. *See* D.I. 475, Joint Pretrial Stipulation and Order.

Defendants had an affirmative duty to preserve the Gateway as evidence.

In fact, that duty arguably arose years earlier. Kates resigned from CB in December 2003 and from BR on February 13, 2004. Immediately thereafter, Kates began working for ASG. As of early 2004, Kates realized that Beard, the principal of both CB and BR, was likely to sue him and his new employer. Plaintiffs filed this action against Kates, ASDI, ASG, and others on May 4, 2005. On June 21, 2005, CB and BR served their first set of interrogatories and document requests. Those discovery requests sought, among other things, electronically stored information and documents of the type likely to be found on Kates's laptop. Thus, Kates, ASDI, and ASG arguably had a duty to preserve the laptop dating back to the end of June 2005, if not earlier.

In that regard, I note that Kates acquired the Gateway laptop while he was employed by CB and BR. He also continued to use the laptop at ASG and ASDI, and admitted that throughout the relevant period he used the Gateway for work, as well as for personal matters. Because CB, BR, ASG, and ASDI all were involved in similar or related business segments and many of the allegations in the Complaint concerned Kates's actions on behalf of those companies, the relevance of Kates's laptop is difficult to dispute.

According to Plaintiffs, Kates tampered with his laptop and the original and substitute hard drives in a way that destroyed or threatened to destroy relevant evidence on a number of occasions. For purposes of the pending Motion, three separate sets of actions require discussion: (1) Kates's deletion of all ASG data and files from the original hard drive in or around November 2005; (2) Biggers's installation of a new hard drive in the laptop in or around December 2007 and return of the original

hard drive to Kates, who then could not account for its whereabouts; and (3) Kates's tampering with the laptop and deletion of certain files in July 2008, just before I ordered Defendants to produce it for Plaintiffs' inspection. I address each of those instances below in terms of Defendants' duty to preserve relevant evidence.

#### 1. The November 2005 actions

■ Kates admits that, in approximately November 2005, after ASG laid him off, he deleted all ASG data and files from his laptop and "emptied" the trash or recycle bin. In other words, he destroyed a significant amount of information on the laptop. By that time, Kates had been in litigation with Plaintiffs for six months and in receipt of Plaintiffs' first discovery requests for over four months. The evidence of record also shows that sometime between December 2003 and March 2004 Kates used the Gateway computer and information on it to make a presentation to the ASDI board of directors. Yet, there is no evidence that Kates took any action to avoid deleting or otherwise compromising the information regarding that presentation when he deleted certain files in November 2005, and the Court has no way to determine whether that information was deleted at that time. I find, therefore, that Kates failed to comply with his obligation to preserve relevant evidence in this instance.

■ ASDI and ASG deny any culpability for Kates's destruction of evidence in late 2005, arguing that Kates acted entirely on his own. I disagree. ASDI and ASG, along with Kates, all became Defendants in this action in May 2005; they decided to hire the same attorney to represent them; and they all received Plaintiffs' discovery requests in or around June 2005. Consequently, ASDI and ASG each had an obligation to preserve evidence relevant to

this dispute well before November 2005. Nevertheless, Defendants suggest that because no one specifically had requested Kates's laptop as of that time, they had no obligation to preserve it. That mistaken view leaves ASDI, ASG, and their counsel off the hook too easily.

In complex commercial litigation today, virtually all discovery involves electronic discovery to some extent. It also is well known that absent affirmative steps to preserve it, at least some electronically stored information ("ESI") is likely to be lost during the course of litigation through routine business practices or otherwise. These realities counsel strongly in favor of early and, if necessary, frequent communications among counsel for opposing litigants to determine how discovery of ESI will be handled. To the extent counsel reach agreements recognizing and permitting routine destruction of certain types of files to continue during litigation, the Court has no reason to object. Conversely, if the parties do not focus on the handling of e-discovery in the early stages of a case, the Court is not likely to be sympathetic when, for example, one party later complains that stringent measures were not instituted voluntarily by her adversary to ensure that no potentially relevant information was lost. Rather, instead of holding a party to a stringent standard that might have been appropriate if established earlier in the case, the Court probably will apply an approach it deems reasonable, taking into account the insights provided by the case law and some of the

guidelines and principles developed by various respected groups that have studied the challenges of electronic discovery.[66]

Turning to Kates's deletion of files from his laptop in November 2005, I consider it important that counsel for Kates, ASDI, and ASG apparently did nothing to notify those Defendants and their employees of the need for care in terms of preserving relevant ESI once litigation had been instituted. This is especially true in the case of Kates, who was then an employee of ASG, and whose interactions with CB, BR, ASG, and ASDI formed the basis for much of the Complaint. All of those companies were relatively small. In addition, Kates was a senior scientist with CB, BR, and ASG. Hence, it is not surprising that he had a laptop computer on which he did his work-related business. In short, Defendants knew or, at least, should have known that Kates had a laptop that might contain information relevant to the litigation and, therefore, should be preserved. The complete absence of any evidence that Defendants ASDI, ASG, or Kates took any action to satisfy their obligation to preserve relevant information on Kates's laptop in 2005 leads me to conclude that ASDI and ASG bear some responsibility for the destruction of evidence that occurred in November 2005, albeit much less than Kates himself.

### 2. The December 2007 actions[67]

■ In early December 2007, Kates gave his laptop to Biggers at Intelligent

**66.** *See, e.g.,* Conference of Chief Justices, *Guidelines for State Trial Courts Regarding Discovery of Electronically Stored Information* (2006), *available at* http://www.ncsconline. org/images/EDiscCCJGuidelinesFinal.pdf; *The Sedona Principles: Best Practices, Recommendations & Principles for Addressing Electronic Document Production* (2005), *available at* http://www.thesedonaconfere nce.org/

dltForm?did=SedonaPrinciples200401.pdf; *Sedona Guidelines.*

**67.** Between November 2005 and December 2007, Kates twice successfully (and once unsuccessfully) reformatted the original hard drive and reinstalled system software. In each case, Kates's actions created a risk that relevant information on the original hard

Solutions to be fixed. By that time, ASDI, ASG, and Kates still were represented by the same counsel and unquestionably knew that the laptop might contain relevant information. Plaintiffs had requested it specifically, but Defendants refused to produce it without a court order. After determining that the hard drive would not "spin" and that he could not make a "ghost" copy of the drive, Biggers replaced it with a new drive and returned the original to Kates. The original drive has not been seen since then.

The loss of the original hard drive deprived Plaintiffs of the opportunity to examine what might have been relevant evidence. Plaintiffs' IT expert, Paul Herrmann of EVI, has sworn that, even though the hard drive did not spin or operate when Biggers examined it, there is a high likelihood that the drive could have been repaired with full recovery of all data from it.[68] Defendants did not rebut Herrmann's testimony, and I find it credible.

Based on Kates's testimony regarding the information he deleted from the laptop in 2005, the presentation Kates gave to ASDI between December 2003 and March 2004 conceivably still remained on the original hard drive that Kates gave to Biggers. Had Biggers or Kates taken appropriate precautions to preserve that defective drive, the evidence on it likely would be available today. Unfortunately, no such precautions were taken.

In these circumstances, Kates is plainly culpable for the loss of the original hard drive. As to ASDI and ASG, their degree of fault is greater than it was in connection with Kates's actions in November 2005. Despite knowing that the laptop might

contain relevant evidence, ASDI, ASG, and their counsel did virtually nothing to preserve that computer. The sole exception was Defendants' counsel's admonition to Kates not to trash the laptop. ASDI's complicity in the loss is heightened by the pivotal role played by Biggers, an employee of Intelligent Solutions, which was at least informally affiliated with ASDI in that the two companies had common owners and Intelligent Solutions served as an IT and e-discovery consultant for ASDI and ASG in this litigation, over Plaintiffs' objection. At a minimum, ASDI and its counsel should have advised Intelligent Solutions of the importance of preserving relevant information, such as the contents of Kates's laptop. Instead, Biggers of Intelligent Solutions replaced the original hard drive, failed to ensure that the original drive was safeguarded, and sent a bill for his work to ASDI.

Based on these circumstances, I find that Kates, ASDI, and ASG all breached their obligations to preserve relevant evidence.

### 3. The July 2008 actions

 In late July 2008, after being advised that the Court was likely to order the immediate production of his laptop, Kates brazenly ran a disk-cleanup program on the new hard drive on the eve of the hearing regarding it. At the time, Kates's counsel apparently did not know the original hard drive had been replaced.[69] With the benefit of hindsight and the belated development of the surrounding facts, it seems unlikely that the new hard drive would have contained any relevant information. In addition, the in-

drive would be overwritten and effectively destroyed.

68. PRB Ex. J, Herrmann Aff., ¶¶ 5, 10–17.

69. Indeed, Kates himself claims to have forgotten that fact when he took the challenged actions in July 2008. *See* KAB at 13.

formation Kates deleted apparently pertained to pornographic images that would have caused him personal embarrassment, rather than material relevant to the case. Nevertheless, Kates tampered with the laptop without consulting with or providing any advance notice to his own counsel, let alone Plaintiffs. This Court cannot condone such flagrant disregard for the discovery rules and a party's obligation to preserve potentially relevant evidence.

Having concluded that Kates, ASDI, and ASG are responsible with varying degrees of culpability for the spoliation of potentially relevant evidence, I turn next to the appropriate sanctions for that conduct. The primary sanction CB and BR seek is the entry of a default judgment against all three of these Defendants as to Counts I and II of the Complaint. In the alternative, Plaintiffs urge the Court to draw an adverse inference based on the unavailability of the original hard drive and information from the laptop. Additionally, CB and BR request an award of their attorneys' fees and expenses in prosecuting the pending Motion.

## B. What Sanctions Are Appropriate for the Failure to Preserve Evidence?

The Court has the power to issue sanctions for discovery abuses under its inherent equitable powers, as well as the Court's "inherent power to manage its own affairs." [70] In addition, under Court of Chancery Rule 37(a)(4), entitled "Expenses and Sanctions," a party that successfully petitions the Court on a motion for an order compelling discovery may recover reasonable expenses, including attorneys' fees, "unless the Court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust." Likewise, under Rule 37(b)(2), "[i]f a party . . . fails to obey an order to provide or permit discovery, . . . the Court may make such orders in regard to the failure as are just." Such remedial measures may include an order that "designated facts shall be taken as established" or "an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence." [71] Moreover, the Court may require the offending party to pay "reasonable expenses, including attorney's fees, caused by the failure." [72]

Sanctions serve three functions: a remedial function, a punitive function, and a deterrent function. [73] Keeping these purposes in mind, the Court will consider the following factors in determining the appropriate sanctions:

(1) the culpability or mental state of the party who destroyed the evidence;

(2) the degree of prejudice suffered by the complaining party; and

(3) the availability of lesser sanctions which would avoid any unfairness to the innocent party while, at the same time, serving as a sufficient penalty to deter the conduct in the future. [74]

The Court has wide latitude to fashion an appropriate remedy, but the remedy must be tailored to the degree of culpability of

---

70. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106–07 (2d Cir.2002); *see also Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir.1994).

71. Ct. Ch. R. 37(b)(2)(A-B).

72. Ct. Ch. R. 37(b)(2).

73. *Micron Tech., Inc. v. Rambus Inc.*, 255 F.R.D. 135, 148 (D.Del.2009) (citation omitted).

74. *Positran Mfg., Inc. v. Diebold, Inc.*, 2003 WL 21104954, at *2 (D.Del. May 15, 2003) (citation omitted).

the spoliator and the prejudice suffered by the complaining party.

 As a preliminary matter, ASDI seems to argue this Court does not have the power to issue a default judgment or grant an adverse inference under these circumstances, because the original hard drive was already unavailable before I issued the order to produce the laptop in July 2008.[75] This argument fails for several reasons. First, but for the actions and inactions of these Defendants *after Plaintiffs specifically requested the laptop* that is the subject of the order in question, the original hard drive would have been available. The Court will not excuse Defendants' self-inflicted difficulties.[76] Second, although the original drive apparently was defective, the evidence shows the information on it probably could have been retrieved. And third, neither ASDI, ASG, nor Kates advised Plaintiffs when they produced the laptop that it had a new hard drive. Instead, they allowed Plaintiffs and their IT expert to embark on a wasteful wild goose chase, thinking they were dealing with the original hard drive.

#### 1. Default judgment or dismissal

 The most severe remedy for the destruction of evidence is the imposition of a default judgment.[77] To impose a default judgment, the spoliator must have acted "willfully or in bad faith and intended to prevent the other side from examining the evidence."[78] Entry of a judgment against the spoliating party should be regarded as "a last resort,"[79] however, and a motion for such relief should be "granted only if no other sanction would be more appropriate under the circumstances."[80]

 Entry of a default judgment on Counts I and II of the Complaint would be an extreme sanction, and the record in this case does not support it. Plaintiffs' strongest argument for a default judgment rests on their allegation that there were incriminating emails among Kates and Defendants and Pfizer when Kates still was working for Plaintiffs. Yet, Plaintiffs have not shown that the Gateway, even in its original form, likely would have included such emails or that those emails would have reflected the actions Plaintiffs allege.[81] Further, as to Plaintiffs' complaints about the loss of the presentation to ASDI, I find that drawing an adverse inference on that issue should provide an appropriate sanction under the circumstances.

Moreover, although Kates and arguably ASDI and ASG, as well, acted recklessly in not preserving the original hard drive, I am not convinced they did so with any purpose of deceiving or misleading Plaintiffs or the Court. The showing of intentional misconduct is stronger as to Kates's deletion of files from the Gateway in July 2008, but the relevance of the affected files, if any, appears to have been marginal, at best. I conclude, therefore, that the conduct Plaintiffs complain of does not warrant entry of a default judgment against Kates, ASDI, or ASG.

---

**75.** *See* AAB at 18–19.

**76.** *See Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. 68, 72 (S.D.N.Y.1991).

**77.** *Sundor Elec., Inc. v. E.J.T. Constr.,* 337 A.2d 651, 652 (Del.1975).

**78.** *Positran,* 2003 WL 21104954, at *2 (citations omitted).

**79.** *Baliotis v. McNeil,* 870 F.Supp. 1285, 1290 (M.D.Pa.1994).

**80.** *Sundor,* 337 A.2d at 652.

**81.** Whether the conduct of Kates, ASDI, and ASG regarding preservation of the laptop warrants drawing an adverse inference is discussed *infra* Part II.B.2.

## 2. Adverse inference

 Another sanction that affects the merits of an action is the drawing of an adverse inference against the spoliator. As the Delaware Supreme Court said, "[i]t is the duty of a court, in such a case of willful destruction of evidence, to adopt a view of the facts as unfavorable to the wrongdoer as the known circumstances will reasonably admit." [82] More recently, the Supreme Court articulated the standard for drawing an adverse inference as follows:

> An adverse inference instruction is appropriate where a litigant intentionally or recklessly destroys evidence, when it knows that the item in question is relevant to a legal dispute or it was otherwise under a legal duty to preserve the item. Before giving such an instruction, a trial judge must, therefore, make a preliminary finding that the evidence shows such intentional or reckless conduct.[83]

It is not enough that the "absence of evidence is not adequately explained." [84] Likewise, the negligent destruction of evidence does not warrant drawing an adverse inference; rather, the drawing of an adverse inference requires as a predicate a "preliminary finding of intentional or reckless destruction of evidence." [85]

 Before applying the *Sears* test to these facts, I pause to define some key terms. The intentional destruction of evidence is reasonably straightforward. "Intention" modifies the *actus* reus of the destruction in the sense that the act was voluntary. Thus, for example, a somnambulist who lights a match and tosses it onto a pile of relevant documents does not act with the required mental state for spoliation. For spoliation, the spoliator also must have intended to act "with purpose." [86] In *Gallagher*, the Delaware Supreme Court "reasoned that an adverse inference is consistent with human nature and common sense: if a party intentionally destroys evidence, it is reasonable to infer that the evidence was not favorable to that party." [87]

 In the spoliation context, recklessness is a bit more difficult to define. On a spectrum of possible states of mind, recklessness exists somewhere between intentional conduct on one side and negligent conduct on the other side. In *Jardel v. Hughes*, the Delaware Supreme Court defined recklessness in a civil context as "a conscious indifference to the rights of others." [88] In further describing civil recklessness, the Court stated: "Where the claim of recklessness is based on an error in judgment, a form of passive negligence,

82. *Equitable Trust Co. v. Gallagher*, 102 A.2d 538, 541 (Del.1954).

83. *Sears, Roebuck & Co. v. Midcap*, 893 A.2d 542, 552 (Del.2006).

84. *Id.* at 550.

85. *Id.*

86. *See Sears*, 893 A.2d at 550; *see also Black's Law Dictionary* 826 (8th ed.2004) (defining intentional as "[d]one with the aim of carrying out the act"). In this sense, intentional spoliation is similar to criminal intentionality. *See* 11 *Del. C.* § 231(e): "A person acts inten-

tionally with respect to an element of an offense when: (1) If the element involves the nature of the person's conduct or a result thereof, it is the person's conscious object to engage in conduct of that nature or to cause that result; and (2) If the element involves the attendant circumstances, the person is aware of the existence of such circumstances or believes or hopes that they exist."

87. *Sears*, 893 A.2d at 548 (citing *Equitable Trust Co. v. Gallagher*, 102 A.2d 538, 541 (Del.1954)).

88. *Jardel v. Hughes*, 523 A.2d 518, 530 (Del. 1987).

plaintiff's burden is substantial," because the *"precise harm which eventuated must have been reasonably apparent but consciously ignored* in the formulation of the judgment." [89] Similarly, the Delaware Pattern Jury Instructions for Civil Practice define reckless conduct to include a consciousness element:

> Reckless conduct reflects a *knowing disregard* of a substantial and unjustifiable risk. It amounts to an "I don't care attitude." Recklessness occurs when a person, with no intent to cause harm, performs an act so unreasonable and so dangerous that he or she knows, or should know, that harm will probably result.[90]

 Thus, drawing an adverse inference is appropriate when an actor is under a duty to preserve evidence and takes part in the destruction of evidence while being consciously aware of a risk that he or she will cause or allow evidence to be spoiled by action or inaction and that risk would be deemed substantial and unjustifiable by a reasonable person. Applying that standard, I conclude that it is appropriate to draw an adverse inference against Kates for his actions in deleting the ASG documents shortly after he was laid off and for having his hard drive replaced by Intelligent Solutions and failing to maintain the original drive or make any reasonable effort to preserve it.

Kates is a highly educated individual, having received a doctorate in chemistry, and a sophisticated businessman. Kates, ASDI, and ASG all were on notice by mid–2005 that electronic documents could be relevant to this action. Moreover, Kates admitted knowing that reformatting his laptop's hard drive on numerous occasions could overwrite or delete data stored on the hard drive. Nevertheless, around November 2005, Kates intentionally deleted files from the laptop after ASG laid him off. Moreover, in or around September 2007, Mr. Elzufon, then lead counsel for Kates, ASDI, and ASG, explicitly told Kates not to destroy his laptop. Still, within a few months, Kates had his original hard drive replaced by an agent of ASDI and then lost the original drive. I find, therefore, that Kates knew of his duties to preserve evidence, including specifically the information on his laptop, but consciously disregarded those duties. Thus, an adverse inference is warranted based on the replacement and subsequent loss of the original hard drive.

I next must determine what adverse inference can be drawn from Kates's spoliation of evidence. The Motion focuses on two categories of supposedly missing documents: (1) emails to or from Kates during

---

89. *Id.* at 530 (emphasis added).

90. Del.Super. P.J.I. Civ. § 5.9 (2000) (emphasis added). Criminal recklessness also incorporates a "conscious" or "aware" state of mind. The Delaware Code provides:
> A person acts recklessly with respect to an element of an offense when the person is aware of and *consciously disregards* a substantial and unjustifiable risk that the element exists or will result from the conduct. The risk must be of such a nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in such a situation.

11 Del. C. § 231(e) (emphasis added). The Model Penal Code similarly states:
> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, *its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.*

Model Penal Code § 2.02 (emphasis added).

the 2003–early 2004 timeframe, and (2) a presentation made by Kates to the shareholders of ASDI between December 2003 and March 2004. Plaintiffs urge the Court to infer that the missing information included emails relating to communications between Kates and Blize, dating from before Kates left BR or CB, as well as emails between Kates and customers of BR and CB wherein he tried to poach clients from BR and CB. Plaintiffs also ask the Court to draw an adverse inference with respect to the contents of the presentation Kates made to ASDI.

 There are two problems with Plaintiffs' argument vis-à-vis the emails. First, Plaintiffs have no direct evidence that these emails ever existed. The Delaware Supreme Court has held that "even if [a party] were entitled to some kind of inference from [another party's] failure to produce records, this inference does not amount to substantive proof and cannot take the place of proof of a fact necessary to [the first party's] case."[91] In other words, an adverse inference is exactly that—an inference and not substantive proof. Plaintiffs argue that the paucity of emails produced[92] in comparison to the seventy or so phone calls between Blize and Kates suggests that there may have been more emails that were deleted. To obtain an adverse inference, however, a party must offer more than mere speculation and conjecture that a particular document existed.

Second, an email, almost by definition, has a sender and a receiver. Plaintiffs have taken extensive discovery from ASDI and from other third parties with whom CB or BR had relationships. Even if Kates had destroyed certain emails on his end, the emails still would exist on the other end and would have been produced. In fact, some emails of the type Plaintiffs seek were produced. For these reasons, I find that Plaintiffs are not entitled to an adverse inference regarding the existence of incriminating emails.

The PowerPoint presentation, however, stands in a different position than the emails. Although the exact timing of the presentation is disputed, the parties agree that Kates made a presentation using the Gateway to the ASDI board of directors or major shareholders sometime between December 2003 and March 2004. The presentation included some information regarding custom synthesis and a catalog of compounds, which, broadly speaking, may have overlapped with what BR and CB were doing. In this instance, CB and BR are entitled to an adverse inference that Kates's presentation to the ASDI board included a "replicate" of the CB catalog. Kates has admitted he made that presentation from information on the Gateway. Consequently, it is reasonable to infer the information for the presentation would have been on the original hard drive for the Gateway. Due to the recklessness of, at least, Kates and arguably ASDI and ASG, as well, in late 2007 and thereafter, in the face of their obligations to preserve potentially relevant evidence, the original hard drive is "gone" and cannot be examined for purposes of this litigation. In these circumstances, I consider it appropriate under the standard set forth by the Supreme Court in *Sears* to draw an ad-

**91.** *See Collins v. Throckmorton,* 425 A.2d 146, 150 (Del.1980) (internal citation omitted).

**92.** In their opening brief, Plaintiffs asserted no emails between Kates and the other parties of interest during the relevant period had been produced. POB at 1–2. In his answer-

ing brief, however, Kates showed that was not true. In fact, the extensive discovery in this action resulted in the production of a number of emails of the type Plaintiffs claimed were nonexistent. *See* KAB at 5, citing Ex. B.

verse inference that the presentation did include a copy of information from the CB catalog.[93] Whether additional adverse inferences are warranted will need to await the completion of the post-trial briefing and argument.

### 3. Attorneys' fees and costs

 To impose monetary sanctions, this Court need only find that a party had a duty to preserve evidence and breached that duty. Essentially, this means that negligence alone may be sufficient to support the imposition of monetary sanctions.[94]

Because the original hard drive was replaced, Plaintiffs were forced to engage in what amounted to a wild goose chase in search of information stored on Kates's computer. Indeed, the actions of Defendants ASDI, ASG, and Kates have frustrated the Court, because it was forced to sit through a hearing about the laptop when the original hard drive already was missing and to read Plaintiffs' opening brief on the pending Motion only to be sandbagged, like Plaintiffs, by the admission in the answering papers that the original hard drive already had been replaced by early 2008. The vexatiousness of Kates's conduct was compounded further by his undisclosed deletion of numerous files from the new hard drive before the July 2008 hearing.

In addition, Kates's intentional deletion of information in July 2008 was egregious and demonstrates a callous disregard for proper discovery in this Court. Kates intentionally or recklessly destroyed information on the new hard drive. In addition, ASDI and ASG share at least some of the responsibility for Kates's misconduct from 2005 to 2008 due to their failure to take reasonable steps to ensure that Kates preserved his laptop computer intact and refrained from modifying it. I, therefore, will award CB and BR their attorneys' fees and expenses, including expert fees, associated with this Motion for sanctions jointly and severally against Kates, ASDI, and ASG.

## III. CONCLUSION

For the reasons stated in this opinion, I decline Plaintiffs' request for entry of a default judgment, but I will draw an adverse inference as to the subject matter of the presentation made by Kates to ASDI. Further, I deny Plaintiffs' request for an adverse inference with respect to the allegedly missing emails, but do so without prejudice to Plaintiffs' ability to argue in connection with the post-trial briefing and argument that additional adverse inferences, not involving such emails, are appropriate. Lastly, I award Plaintiffs' their attorneys' fees and expenses for preparation of the briefing and argument related to this Motion, including expenses associated with inspection of the laptop's hard drive.

Plaintiffs shall submit evidence of their attorneys' fees and expenses related to this Motion within ten days of the date of this opinion. Defendants Kates, ASDI, and ASG shall file any objections to the

---

**93.** Whether or not the action or inaction of ASDI and ASG are considered reckless within the meaning of *Sears*, I see no inequity in having this adverse inference affect ASDI and ASG, as well as Kates. In the relevant time period of late 2007 and early 2008, Kates was an employee of ASDI and a co-defendant of both those entities, defending claims based on actions he had taken for both ASG and ASDI.

**94.** *Cf. Gutman v. Klein*, 2008 WL 4682208, at *6 (E.D.N.Y. Oct.15, 2008). As explained *supra* Part II.B.1–2, however, a sanction that would have a direct influence on the merits of a case, such as a terminating sanction like a default judgment or a sanction like an adverse inference, requires more.

claim for fees and expenses within ten days after service of Plaintiffs' evidence.

**IT IS SO ORDERED.**