**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| Delaware Acceptance Corporation, CACV of Colorado, LLC and 202 Investments, Inc., | ) ) | C.A. No. 8861-MA |
| Plaintiffs, | ) | |
| v. | ) ) | |
| Estate of Frank C. Metzner, Sr. Lona C. Metzner, Executrix and Frank C. Metzner, Jr., The Metzner Family, LLC | ) ) ) | |
| Defendants. | ) | |

**MASTER'S REPORT**

Date Submitted:  May 8, 2017
Draft Report:
Final Report:  May 22, 2017

Patrick Scanlon, Esquire, of LAW OFFICES OF PATRICK SCANLON, P.A., Milford, Delaware; Attorney for Plaintiff

Dean A. Campbell, Esquire, of the LAW OFFICES OF DEAN A CAMPBELL, Georgetown, Delaware; Attorney for Defendant

AYVAZIAN, Master

A creditor is seeking to remove the executrix of an estate for cause after she rejected the creditor's claim against the estate in the amount of $41,002.59. The only asset of the estate is the decedent's 49% interest in a limited liability company. The creditor's claim is the basis of a Charging Order attaching any distributions from the company to its members. Under the terms of the limited liability company agreement, the company is dissolved upon the withdrawal of a member unless, within 90 days of such event all remaining members consent in writing to the continuance of the company. The death of a member is an event constituting a withdrawal. The creditor believes that the remaining members did not consent in writing to the company's continuance in a timely fashion. Therefore, the creditor argues that the company should have been dissolved, its assets liquidated, and there would have been sufficient funds in the estate to pay the creditor's claim. The executrix has denied the creditor's allegations, and contends that the remaining members of the limited liability company did consent in writing to its continuance and, as proof, has attached a document purportedly signed within 90 days of the decedent's death by the two remaining members. A one-day trial was held, and I now recommend that the Court remove the executrix for breaching her fiduciary duty to a creditor of the estate, and appoint a neutral party to administer the decedent's estate.

Factual Background

In September 2002, Mr. Frank C. Metzner, Sr. and his wife, Lona C. Metzner, deeded their home in Lewes, Delaware to the Metzner Family Limited Liability Company ("the LLC"),[1] sold their household goods to their son Frank, Jr.,[2] and stopped paying on their credit cards, whose outstanding balances then totaled approximately $55,000.[3] Delaware Acceptance Corporation, CACV of Colorado, LLC and 202 Investments ("the Creditor") were judgment creditors of the couple, and they filed a complaint in this Court which resulted in a Charging Order being issued in December 2010.[4] The Sheriff of Sussex County was directed to serve the Charging Order by serving Frank, Sr. or Lona to attach any distributions owing to either of them from the LLC to satisfy the debts owed.[5] Pursuant to 6 *Del. C.* § 18-703, the couple were to remit their distributions to the Creditor until all the amounts owed were paid.[6] However, the only asset of the LLC was the home in which the couple continued to reside, and no distributions were ever made to either of them.

---

[1] Pl. Tr. Ex. 23-24.
[2] I use first names to avoid confusion and repetition, and intend no disrespect by this practice.
[3] *Delaware Acceptance Corp., et al. v. Estate of Frank C. Metzner, Sr. et al.*, C.A. No. 8861-MA (Del. Ch. Sept. 12, 2016) (Order adopting Master's Final Report dated Feb. 17, 2016).
[4] Pl. Tr. Ex. 20.
[5] Pl. Tr. Ex. 21.
[6] *Id.*

Frank and Lona were the original members of the LLC, each owning a 50 percent interest,[7] but they subsequently made Frank, Jr. a third member by giving him a two percent membership interest in the LLC. Frank, Sr. died on October 26, 2012.[8] Lona was appointed Executrix of the Estate of Frank C. Metzner, Sr., and the Decedent's Last Will and Testament was filed on December 5, 2012, in the Register of Wills Office in Sussex County.[9] The Creditor filed its claim against the Estate on April 15, 2013.[10] The Estate's attorney, Harold W. T. Purnell, II, denied the claim by letter dated June 3, 2013, stating that (a) the Estate was devoid of assets other than the LLC interest, (b) it was understood the Charging Order was not dissolved by Frank, Sr.'s death, and (c) Frank, Sr.'s interest transferred under his Will was transferred subject to the Charging Order.[11] Under the Will, Decedent's 49 percent interest in the "Estate Planning LLC" was bequeathed to Frank, Jr.[12] Lona continues to reside in the Lewes home since Frank, Jr. has never considered selling it.

On September 3, 2013, the Creditor filed this complaint seeking the removal of Executrix.[13] The Creditor alleged on information and belief that, following the death of Frank, Sr., the remaining members of the LLC did not consent in writing to the

---

[7] Pl. Tr. Ex. 2-18.
[8] Pl. Tr. Ex. 26.
[9] Pl. Tr. Ex. 160-163.
[10] Pl. Tr. Ex. 19.
[11] Pl. Tr. Ex. 141.
[12] Pl. Tr. Ex. 160.
[13] Docket Item ("DI") 1.

continuance of the LLC within the 90-day period required under the LLC Agreement; accordingly, the LLC was dissolved, but no distributions had been made to the Creditor. After unsuccessfully trying to dismiss the complaint,[14] Defendants Estate of Frank Metzner, Sr. and Executrix filed their answer on April 21, 2014.[15] Defendants denied that the remaining members had not consented in writing to the continuance of the LLC prior to January 25, 2013, and attached as an exhibit a one-page typewritten document entitled "Metzner Family LLC" "Election of Remaining to Continue LLC" (hereinafter "the Election").[16] As typed, the Election states:

> The undersigned acknowledge the death of Frank C. Metzner on October 26, 2012.
> Pursuant to Article I, Section 1.5(b) of the Operating Agreement the undersigned constituting all of the remaining Members of the Metzner Family LLC hereby elect to continue the LLC.
> In Witness Whereof the surviving Members have executed this election this ___ day of _____, 20__.[17]

Underneath the body of this document were parallel sets of signatures lines, one set for "Lona C. Metzner Member" and "Frank C. Metzner, Jr. Member" and the other set for "Witness," i.e., whoever was to witness Lona's and Frank, Jr.'s signatures. The only signatures on the executed Election were those of Lona and Frank, Jr. According to her trial testimony, Executrix handwrote the date, i.e., the "30[th]", the month, i.e.,

---

[14] DI 5.
[15] DI 24.
[16] Pl. Tr. Ex. 1.
[17] *Id.*

"November", and the year, i.e., "12" in the blank spaces provided on this typewritten document.

During this litigation, the parties have contested numerous issues, including the validity of the Charging Order and the scope of electronic discovery. Most recently, the Creditor filed a motion to produce directed to a third-party, i.e., the Estate's attorney, seeking a Court order directing the attorney to make available the computers in his office and his laptop computer for examination by the Creditor's expert.[18] The motion was opposed by Defendants who argued that confidential communications might be disclosed and there was no plan to compensate the attorney or his staff for their lost work time.[19] I issued a draft report on December 15, 2016,[20] directing Defendants to request the metadata relevant to the Election from the attorney's computers and/or from his former law firm's network server, and to produce the metadata to the Creditor within 60 days. If Defendants failed to produce the metadata within 60 days, I indicated that I would draw the adverse inference that the Election had been created after the 90-day period following Frank, Sr.'s death and had been backdated to appear as if it was timely. I also stayed the period for taking exception to my draft report until completion of the trial proceedings mandated by Vice Chancellor

---

[18] DI 78.
[19] DI 82.
[20] DI 88.

Montgomery-Reeves' September 12, 2016 Order denying Defendants' motion for summary judgment.[21]

No metadata was ever delivered to the Creditor by the Defendants. On May 8, 2017, I presided over a one-day trial.[22] During the trial, Defendants introduced into evidence another document, one that previously had not been produced during this litigation. According to Lona's testimony, she had written this letter to Purnell on her desktop computer on November 10, 2012 ("the November 10th letter"). The letter states:

> I have the very sad task of writing to you today because my husband passed aware on October, 26, 2012, and I need you to handle his Estate.
> My son and I need to continue the Metzner Family LLC. The Metzner Family LLC Agreement requires us to submit in writing within 90 days of his death, our intention to continue the Estate Planning LLC. What is involved with that?
> I will get my son to sign this letter also – so you can have it for the file.
> Please let me know if more is needed. Before my husband's death there were three members; - can it go forward with only two members?
> I am also enclosing a copy of my husband's Will – as you may need it also. I already filed it with the Register of Wills.
> Mr. Purnell, please have Eileen call me if we need to make an appointment![23]

The November 10th letter had been signed by Lona and Frank, Jr. During the trial, Executrix testified that she had read the LLC Agreement and had talked about the

---

[21] DI 85.

[22] DI 104.

[23] Def. Tr. Ex. 1. The Creditor withdrew its initial objection to the admission of the document into evidence after questioning the Executrix.

LLC with her husband prior to his death and, after Frank, Sr.'s death, she also had discussed it with her son. According to Executrix, it was always the family's intention to continue the LLC. However, the desktop computer on which she had written the November 10th letter had "gone bad" a few years ago and had been disposed of. Executrix testified that she mailed this letter to Purnell and, at a later date, called Eileen Nesko, who is Purnell's estate assistant paralegal. It turned out that the Executrix did not need an appointment. After the Election document had been prepared by Purnell, Eileen called the Executrix and told her it was ready. Frank, Jr. drove his mother to the attorney's office where they executed the Election. Purnell was not in his office, and no one witnessed their signatures.

Frank, Jr.'s memory was not as sharp as his mother's memory. He recalled driving his mother to the attorney's office multiple times and signing many documents. However, he could not remember which document he signed on any given occasion. At trial, Frank, Jr. recalled having signed the Election in the attorney's office, but admitted that in his earlier deposition, he had testified that he did not remember signing the Election.

Purnell testified that he believed the Election had been prepared in his office.[24] For a two-sentence document like the Election, he would have handwritten a draft, and then given the draft to Eileen to type in the proper format, and then he would have

---

[24] Purnell also had drafted the LLC's Operating Agreement. Pl. Tr. Ex. 2-18.

proof read it. It was the attorney's practice to proof read all documents before he released them from his office. However, Purnell could not be certain whether he had ever proof read the Election. Furthermore, documents prepared in his office normally would have a subscript in the bottom left of the document with a locator number, but the Election had no such identification number on it. The absence of this number indicated to Purnell that the Election document had not been saved anywhere in his law firm's computer network. Purnell also testified that it was his practice to witness signatures on documents like the Election if they were signed in his office. If the document had been mailed to the client, then the client would have provided him with a copy of the executed document. However, Purnell had no recollection of when he first saw the Election after it had been executed by Lona and Frank, Jr.

Eileen testified that she had worked for Purnell for nearly 12 years. She testified about the process of identifying and tracking documents on the law firm's network server. According to Eileen, no one in their office would ever save documents to the hard drive on a desktop computer. Although it was possible to print a document without saving it, the only way a document prepared in their office would not have been saved was either by mistake or if instructed to do so by Purnell. Eileen did not remember any such instruction. Eileen did not remember preparing the Election document. Eileen also did not recall seeing the Election document in the course of assisting Purnell with the Estate. Eileen also did not recall seeing the November 10th

letter. Eileen testified that if a client sent a letter to Purnell, the receptionist would have opened the mail and date-stamped the document as of the date of receipt. The trial exhibit had not been stamped as received. In response, Executrix testified that she had pulled the November 10th letter from her own file and had provided it to her trial attorney.

Issues

The Creditor argues that Executrix should be removed because she made no effort to sell the 49 percent membership interest in the LLC, valued at $70,000, which was more than sufficient to pay the Creditor's claim. In addition, the Creditor argues that there is a credibility question whether the Election was signed within the 90 days following Frank, Sr.'s death. According to the Creditor, Lona clearly fabricated the November 10th letter, which was produced at the last minute, so she appears to have no trouble forging document by way of the date.

The Estate and Executrix argue that they presented sworn testimony from Lona and Frank, Jr. that the Election was executed within 90 days of Frank, Sr.'s death. They argue that the Creditor has not met its burden of demonstrating that the Election had not been signed on November 30, 2012. They also argue that there is no way to pay the Creditor's claim without disregarding the LLC, and that Lona has an obligation to the LLC as well as the Estate.

Analysis

This case hinges on the authenticity of a document, the Election, which in turn depends upon the credibility of several witnesses. As the fact finder, having listened to the testimony of Lona C. Metzner and observed her demeanor, I find that she is not a credible witness. Her detailed testimony regarding the November 10th letter and the execution of the Election was stilted and sounded rehearsed. Frank, Jr.'s testimony, rather than corroborating his mother's account, was so vague as to be useless. Other than Purnell's sworn belief that his office had prepared the Election document, there was no other evidence to corroborate Executrix's testimony that she and her son had executed the Election in the lawyer's office on November 30, 2012. The absence of any witness's signature or locator number on this document further demonstrates its unreliability. In addition, the last-minute production of the November 10th letter was simply too good to be true. This litigation has been ongoing for nearly four years, yet the Creditor had not seen this document until it was introduced at trial. Moreover, it was custom-crafted to elude electronic discovery since Executrix testified that her desktop computer had been junked two years earlier. The text of this document is also at odds with Executrix's earlier testimony that she and her husband always referred to the LLC as the "Estate Planning LLC," not the "Metzner Family LLC."[25] In addition,

---

[25] In Frank, Sr.'s Last Will and Testament dated January 27, 2012, the LLC is referred to as the "Estate Planning LLC" four times. Pl. Tr. Ex. 160-162.

the November 10th letter states that Executrix already had filed the Will, but the record shows that the Will was not filed in the Register of Wills Office until December 5, 2012. By seeking to introduce the November 10th letter into the record, Executrix revealed herself as a person willing to go to great lengths, including backdating documents and offering false testimony at trial, in order to preserve her home, the only asset of the LLC. Such a person should not be a fiduciary of an estate.

The Creditor filed its Complaint for a Charging Order against the Metzner Family LLC on April 16, 2007.[26] Since that time, the Creditor has been involved in litigation with Frank, Sr. and Lona, in one capacity or another, to satisfy its judgments. Executrix had reason to anticipate litigation following the death of her husband. Therefore, Executrix had an obligation to preserve evidence that might be relevant to the issues in the lawsuit.[27] Nevertheless, she offered into evidence one document that allegedly had been prepared on a desktop computer connected to a law firm's network server, yet this document had no identification number. She offered into evidence another document, allegedly prepared on her own desktop computer that she subsequently disposed of. The record is insufficient for me to determine whether the failure to save the Election document on the law firm's network server was an

---

[26] *Delaware Acceptance Corp., et al. v. Frank C. Metzner, et al.*, C. A. No 2898-MG (Del. Ch.).
[27] *See Beard Research, Inc. v. Kates*, 981 A.2d 1175, 1185-86 (Del. Ch. 2009).

intentional or reckless act.[28]  The disposal of the Executrix's own computer was intentional.  Sanctions for such behavior may be severe.  However, the prejudice suffered by the Creditor has not been severe, in my opinion, because even without the metadata, the Creditor has demonstrated that both documents more likely than not had been backdated by Executrix.

Conclusion

For the reasons stated above, I recommend that the Court remove Lona C. Metzner as Executrix of the Estate of Frank C. Metzner, Sr., and appoint a neutral third-party as the successor personal representative of the Estate of Frank C. Metzner, Sr. with a direction to dissolve the LLC, distribute the assets, and pay the Creditor's claim. The parties are referred to Court of Chancery Rule 144 for the process of taking exception to a Master's Final Report.

Respectfully,

/s/ Kim E. Ayvazian

Kim E. Ayvazian
Master in Chancery

KEA/kekz

---

[28] *Id.* at 1191 ("[T]he drawing of an adverse inference requires as a predicate a 'preliminary finding of intentional or reckless destruction of evidence.")(quoting *Sears, Roebuck & Co. v. Midcap*, 893 A.2d 542, 552 (Del. 2006)).