**Jane P. DANBERGER \*, Petitioner,**

v.

**Daryl A. DANBERGER, Respondent.**

File No. CN11–04649.
Petition No. 11–29330.

Family Court of Delaware,
New Castle County.

Submitted: Oct. 18, 2013.
Decided: Dec. 9, 2013.

---

**71.** Supp. Hrg. at 87–88.

**72.** *Hunter v. State*, 783 A.2d 558, 560 (Del. 2001).

\* The Court has assigned pseudonyms to the parties, lay witnesses, and their addresses in this case in order to protect their identities.

Leslie B. Spoltore, Esquire, Fox Rothschild, LLP, Wilmington, Delaware, for Petitioner Jane P. Danberger.

David C. Gagne, Esquire, Woloshin, Lynch, Natalie and Gagne, P.A., Wilmington, Delaware, for Respondent Daryl A. Danberger.

COONIN, Judge:

## NATURE OF THE PROCEEDINGS

This is the Court's decision on a Motion to Dismiss and for Sanctions or in the Alternative for an Adverse Inference and for Sanctions (hereinafter "Sanctions Motion") filed on April 30, 2013 by Jane P. Danberger (hereinafter "Wife"), who is represented by Leslie B. Spoltore, Esquire, against her former husband, Daryl A. Danberger (hereinafter "Husband"), who is represented by David C. Gagne, Esquire. The parties are divorced and matters ancillary to the divorce are pending before the Court. The Sanctions Motion alleges Husband destroyed material evidence. Specifically it is alleged that, following the parties' separation and divorce, Husband destroyed documents that were in a filing cabinet located in the marital home, without authorization or notice to Wife. Wife claims that the docu-ments destroyed by Husband supported her position that her advertising company, Danberger Associates, Inc., is a premarital asset, which should be excluded from equitable division in the ancillary proceeding. Wife's Motion for Sanctions requested a default judgment, whereby Husband's claim that Danberger Associates, Inc. is a marital asset would be dismissed. Alternatively, the Motion for Sanctions prayed for an adverse inference that had the materials not been destroyed, they would have supported Wife's contention that the business was premarital. Additionally, the Motion for Sanctions sought an award of attorneys' fees. The Court held a hearing on this matter on July 1, 2013 and October 15, 2013 to consider whether Husband's alleged destruction of evidence occurred and, if so, whether sanctions were appropriate.

## PROCEDURAL HISTORY

The parties were married on June 10, 1984. Wife filed a Petition for Divorce on September 2, 2011. In her Petition for Divorce, Wife alleges that the parties separated in March of 2010. Husband filed an Answer to the Petition for Divorce in which he claims the parties did not separate until July 1, 2011. A final Divorce Decree was entered on January 26, 2012. The Court retained jurisdiction over matters ancillary to the divorce, namely, property division, permanent alimony, counsel fees, and court costs. For the purposes of this motion, the Court need not determine when the parties separated, because the parties agree that Husband's alleged destruction of documents occurred in February or March of 2012, after the parties had both separated and the divorce granted.

Wife is the president and sole shareholder of a branding, advertising, and marketing agency in corporate form currently named Danberger Associates, Inc. It is

Wife's position that Danberger Associates, Inc. is not subject to property division, because the corporation was initially funded by the transfer of assets from a premarital sole proprietorship.[1] Husband argues that Danberger Associates, Inc. is a marital asset, created during the marriage, and therefore is subject to property division. Pursuant to a Scheduling Order entered on December 28, 2012, the Court determined that it would be in the interest of judicial economy to hold a separate evidentiary hearing prior to the final ancillary hearing to determine whether Danberger Associates, Inc. is a marital asset. The Court's decision on the issue of whether the corporation is a marital asset is the subject of a separate decision of the Court.

Wife filed the instant Motion for Sanctions on April 30, 2013. Wife's Motion for Sanctions averred that there was a filing cabinet located in the marital home, which, among other things, contained tax records and documents which establish the existence of her premarital business. Wife argued that these documents would support her contention that Danberger Associates, Inc. is a premarital asset, because it was solely funded by the assets of a premarital sole proprietorship and that prior to the marriage, she was engaged in this business as a sole proprietorship before incorporating it. Wife did not retrieve the filing cabinet or its contents when she left the marital home in October 2011. At a deposition held on March 26, 2013, Husband admitted that he destroyed documents contained in the filing cabinet sometime in February or March of 2012, after the parties separated and the divorce decree was issued. However, Husband claimed that the only documents destroyed were bank statements from a closed joint checking account that were in the filing cabinet, an assertion disputed by Wife. Wife gained access to the marital home on April 4, 2013 and discovered that the filing cabinet was empty, with the exception of a few electrical cords and some scraps of paper. The Motion for Sanctions asks the Court to grant a default judgment, whereby, Husband's claim that Danberger Associates, Inc. is a marital asset would be dismissed. Alternatively, the Motion for Sanctions requests that the Court apply an adverse inference against Husband, whereby the Court would presume that the destroyed evidence would have supported Wife's claim that Danberger Associates, Inc. should be held to be a non-marital asset.

On May 10, 2013, Husband filed an Answer to the Motion for Sanctions. Husband denied destroying any evidence that would have been relevant to the ancillary proceedings and asked the Court to deny the Motion for Sanctions.

A hearing was held on July 1, 2013 to consider the Motion for Sanctions, but due to time constraints the hearing recessed and resumed on October 15, 2013, prior to the evidentiary hearing regarding whether the current corporation, Danberger Associates, Inc., as it exists today should be considered a marital asset subject to division.

### FINDINGS OF FACT

The Court will not restate all of the testimony and evidence presented at the hearing but will note some of the relevant evidence in support of its findings.

Wife graduated from Lehigh University in 1980 with a bachelor's degree in journalism and science writing. She initially

---

**1.** 13 *Del. C.* § 1513(b)(2) provides in relevant part that marital property means "all property acquired subsequent to the marriage except: ... property acquired in exchange for property acquired prior to the marriage ..."

worked at Wilmington Trust from July to October of 1980 and was later employed at Sonobond from October 1980 to October 1981 as Writer and Project Manager. Between 1981 and 1984, Wife worked for the Krell Corporation, a professional placement agency, where she provided marketing, advertising, and technical writing services to DuPont and several other businesses. Sometime in late 1983 and early 1984, Wife claims that she began to perform freelance advertising and marketing work out of her apartment under the monikers of "The Technical Writers" and "The Copywriters." Wife testified that she created a sole proprietorship in 1984 to perform freelance marketing and advertising work, which later transferred all of its assets and liabilities to create Danberger Associates, Inc., a corporation incorporated in 1986.

According to Wife's testimony, close to the time she started her sole proprietorship, Wife began keeping all of her important records, including tax returns and supporting business documents in a filing cabinet in her apartment. Wife's father apparently instructed her that it is important to keep careful and complete personal and business records. Wife claims that there were many key documents kept in the filing cabinet including tax returns and supporting documents, mortgage statements, and paperwork from a loan that her father had cosigned in 1983 to help her start her freelance business, and various other business and personal records. Wife admitted that now, almost thirty years later, she could no longer be sure what specific documents were kept in the filing cabinet, but she believed that some of the documents were from before her marriage.

The parties were married on June 10, 1984. Prior to their marriage, the parties did not cohabit, have a joint bank account, or otherwise comingle funds. Husband

and Wife initially lived in the Chateau Orleans Apartment Complex in Wilmington. In 1986 the parties moved to 819 Malcom Road in Chadds Ford, Pennsylvania. When the parties relocated, the filing cabinet was moved by professional movers. In 1998, the parties moved again, this time to 40 Terrace Road, Hockessin, Delaware. Again, the filing cabinet was moved by professional movers and placed in the basement of the Terrace Road home. Wife maintains that key documents, including premarital tax returns, continued to be kept in the filing cabinet after the family moved to the Terrace Road home.

Wife left the marital home at Terrace Road in early October 2011 as a result of domestic disputes with Husband. According to Wife, she fled from the home because she no longer felt safe living with Husband. When she decided to leave, Wife hired a moving company to pack and move certain items out of the home while Husband was at work. Wife did not take the filing cabinet or its contents when she moved out in early October, because she lacked adequate time to remove the contents. Thereafter, for several months, Husband prohibited Wife from returning to the home to retrieve personal items left behind. Wife next entered the home in February 2012 with a realtor, but she did not remove the filing cabinet or its contents at that time.

Following the parties divorce, Husband filed a Request for Documents regarding Wife's assets, including tax returns from 1983, 1984, and 1985. Initially, Wife did not produce these documents, because she believed they were stored in the filing cabinet located in the marital residence. On October 26, 2012, Wife filed a Motion for Interim Relief to gain access to the house so she could retrieve these documents. Ultimately, Wife was able to obtain copies of her 1983, 1984, and 1985

personal income tax returns from her accountant. However, these copies did not include supporting documentation for the returns.

In his March 26, 2013 deposition, Husband admitted that sometime between February and March 2012, he shredded documents that had been stored in the filing cabinet, ostensibly because he needed to use the filing cabinet to store other records, although he never did so. Shortly after this deposition, on April 4, 2013, Wife accessed the marital home to retrieve documents and other personal items left behind in the home. Wife was accompanied by two of her colleagues from work, Kelly Smith and Randal Shipley. When Wife opened the filing cabinet, she found it empty with exception of some electrical cords and scraps of paper. Mr. Smith testified that the only items in the filing cabinet were old extension cords, a jewelry appraisal, and other scraps of paper. Husband told Mr. Smith that he shredded the papers in the filing cabinet, because he was worried about identity theft.

Husband testified that starting in 1986 he was responsible for managing the marital finances and keeping records. Husband claimed that only banking statements and appliance manuals were kept in the filing cabinet. Husband denies that any tax returns were kept in the filing cabinet, because copies of the parties' tax returns were kept with their accountant. When the parties moved from the Malcom Road to the Terrace Road home, Husband recalled discarding all of the old bank statements that were in the filing cabinet. Husband believed that the filing cabinet was completely empty when they moved from Malcom Road to Terrace Road. While living at Terrace Road, Husband indicated that he continued to keep bank statements, pay records, and manuals for their children's toys in the filing cabinet.

Sometime between February and March of 2012, Husband purged and destroyed all of the documents that were kept in the filing cabinet. Husband testified that he only destroyed bank statements dating back to 1998 for a joint bank account at Wilmington Trust, which the parties closed after they separated. Husband claimed that he emptied the filing cabinet so that his father could use it for storage. However, Husband's father never used the filing cabinet, opting to use locking storage bins instead. Husband stated that he was certain he only disposed of Wilmington Trust joint bank account statements and that there were no documents in the filing cabinet from the premarital period. This assertion was contradicted by Husband in his deposition when he admitted that it was possible that there were documents in the filing cabinet dating back as far as 1983. Wife introduced into evidence a 1987 jewelry appraisal that she discovered at the bottom of one of the filing cabinet drawers when she accessed it in April 2013. Husband does not deny that he destroyed documents from the filing cabinet after the parties were divorced, but during the pendency of these ancillary matters. The destruction of documents by Husband occurred without notice by Husband to his attorney, to Wife, or to Wife's attorney. Husband acknowledges that he received notice of the automatic preliminary injunction pursuant to 13 *Del. C.* § 1509(a) when Wife filed for divorce, but claims to not remember reading this notice.

Husband also argued that Wife's Motion for Sanction should be denied, because Wife would be unable to prove that Danberger Associates, Inc. is traceable to a premarital asset regardless of what documents were in the filing cabinet. Specifically, Husband asserted that because Danberger Associates, Inc. was incorporated on September 18, 1986 and the corporation was subsequently dissolved on December

31, 2002, that any remaining entity in existence at the time of the parties' separation would been formed during the marriage. In 1997, Wife incorporated a separate operating entity named Danberger Communications, Inc. that managed all non-DuPont accounts for her business. After Danberger Associates, Inc. dissolved in December 2002, Danberger Communications was renamed Danberger Associates, Inc. in February 2003. Husband claims that because the current incarnation of Danberger Associates, Inc. is in fact the corporate entity incorporated in 1997, under a different name, during the parties' marriage, that Wife's assertion that the current Danberger Associates, Inc. is traceable to a premarital asset cannot succeed.[2]

## ANALYSIS

In determining whether to grant Wife's Motion for Sanction, the Court will first consider whether Husband failed to comply with his obligation to preserve relevant evidence or violated the preliminary injunction that arose pursuant to 13 *Del. C.* § 1509 when Wife filed for divorce. Secondly, if the Court finds that Husband failed to preserve evidence, the Court shall determine if sanctions should be issued against husband and what sanctions are appropriate.

### A. Husband Failed to Comply with his Duty to Preserve Relevant Evidence.

 A party in litigation or who has reason to anticipate litigation has an affir-

mative duty to preserve evidence that might be relevant to the issues in the lawsuit.[3] Whether a party has reason to anticipate litigation is dependent on whether facts and circumstances lead to the conclusion that litigation is imminent or should otherwise be anticipated.[4] A court may sanction a party who destroys relevant evidence and therefore breaches this duty.[5]

 There is no question that Husband had an affirmative duty to preserve relevant evidence at the time he destroyed documents from the filing cabinet. By his own admission, Husband destroyed documents from the filing cabinet sometime between February 2012 and March 2012. An affirmative duty to preserve evidence arose when Husband and Wife separated, and Husband could reasonably anticipate that a divorce petition might be filed. Financial records of the parties clearly must be included in the category of relevant evidence. This affirmative duty to preserve evidence became even more apparent when Wife filed a divorce on September 2, 2011. Husband destroyed documents kept in the marital home while litigation concerning the parties' marital property was pending. Husband made no attempt to notify his own attorney, Wife, or Wife's attorney that he planned to purge these documents. It was not until Husband's deposition in March 2013 that Wife discovered that Husband had destroyed documents kept in the filing cabinet. Husband clearly vi-

---

**2.** The documents allegedly destroyed by Husband, if Wife is to be believed, would be material to the issue of the premarital origin of the continuing business enterprise of Wife, the issue specifically addressed in detail by a separate decision.

**3.** *Beard Research, Inc. v. Kates*, 981 A.2d 1175, 1185 (Del.Ch.2009) (*internal citations omitted*).

**4.** *Id.*

**5.** *Id.* (*citing Triton Constr. Co. v. E. Shore Elec. Servs., Inc.*, 2009 WL 1387115, at *2 (Del.Ch. May 18, 2009)).

olated his duty to preserve relevant evidence and acted with flagrant disregard to Wife's right to discover and have access to documents kept in the marital home. Accordingly, sanctions against Husband are appropriate.

■ Additionally, Husband violated the automatic preliminary injunction that arose pursuant to 13 *Del. C.* § 1509(a) when Wife filed for divorce on September 2, 2011. 13 *Del. C.* § 1509(a) provides in relevant part that "upon the filing of a petition for divorce or annulment, a preliminary injunction shall be issued against both parties to the action, enjoining them from transferring, encumbering, concealing or in any way disposing of any property except in the usual course of business or for the necessities of life . . . ." This preliminary injunction was in place at the time that Husband admitted to destroying documents from the filing cabinet. The statute does not limit the nature of the "property" subject to injunctive protection and, therefore, financial records cannot be excluded from the purview of the injunction. Husband's purging of documents was not in the ordinary course of business or for the necessity of life. Therefore, the Court may also issue sanctions against Husband for violating the preliminary injunction that arose pursuant to 13 *Del. C.* § 1509.

Husband argues that the documents that were destroyed were not relevant to the pending ancillary litigation. Specifically, Husband alleges that the only documents that were destroyed between February and March 2012 were statements from a joint account the parties had at Wilmington Trust, which was subsequently closed when they separated. Husband claims that he purged documents because his father wanted to use the filing cabinet for storage. However, Husband at an earlier time claimed he destroyed the documents for a different reason; because he was concerned about identity theft. Wife, on the other hand, believes that there were tax returns, supporting documents, and business records in the filing cabinet, including premarital tax returns. Wife argues that these documents would support her position that Danberger Associates, Inc. is traceable to premarital assets.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." [6] Husband argues that the bank statements that he admitted to destroying would have no impact on a fact that is of consequence to the determination of the action. Wife alleges the documents destroyed were relevant to her contention that Danberger Associates, Inc. is a premarital asset. Considering Husband's lack of notice to Wife regarding the destruction of documents and Husband's inconsistent reasons for why he destroyed the documents, the Court finds Wife's position more plausible. The parties are currently engaged in litigation involving the division of marital property and the premarital nature of Wife's business. Even if, as Husband alleged, the filing cabinet only contained joint bank statements, it was not appropriate for Husband to destroy these documents without first notifying Wife and confirming there were no documents she needed. Accordingly, the Court finds that Husband destroyed relevant evidence and sanctions against Husband are appropriate.

Husband also argues that the Motion for Sanctions should be denied, because Danberger Associates, Inc. is not traceable to premarital assets and, therefore, any pre-

6. D.R.E. 401.

marital records, if Wife is to be believed, that were destroyed are irrelevant to the issues involved in the division of marital assets. Specifically, Husband alleges that the current Danberger Associates Inc. is traceable to Danberger Communications, Inc., which was incorporated in 1997 during the parties' marriage. The Court held a separate evidentiary hearing on the matter of tracing the corporate assets of Danberger Associates, Inc. to determine if it is to be excluded as a non-marital, premarital asset. The documents destroyed are relevant to the issue of whether Wife's current business enterprise existed prior to the marriage. Therefore, the Court can infer that documents in the cabinet, had they not been destroyed by Husband, would have supported Wife's claim that Danberger Associates, Inc. is directly traceable to premarital assets.

### B. Sanctions are Appropriate for Husband's Failure to Preserve Evidence.

■ Pursuant to *Family Court Rule of Civil Procedure* 37(b)(2), "if a party . . . fails to obey an order to provide or permit discovery, . . . the Court may make such order in regard to the failure as are just." Appropriate sanctions include an order that designates that facts shall be taken as established or an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated

matters into evidence.[7] Additionally, the Court may order the offending party to pay reasonable expenses, including attorneys' fees.[8] Sanctions serve a remedial function, punitive function, and deterrent function.[9] In determining which sanctions are appropriate, the Court considers the following factors: (1) the culpability or mental state of the party that destroyed the evidence; (2) the degree of prejudice suffered by the complaining party; (3) the availability of lesser sanctions which would avoid any unfairness to the innocent party while, at the same time, serving as a sufficient penalty to deter the conduct in the future.[10] The Court has wide latitude to fashion an appropriate remedy, but the remedy must be tailored to the degree of culpability of the spoliator and the prejudice suffered by the complaining party.[11]

■ In her Motion for Sanctions, Wife requests a default judgment against Husband. Specifically, Wife requests that Husband be barred from raising the claim that Danberger Associates, Inc. is a marital asset that is subject to equitable division. Default judgment is an appropriate sanction when a party acted willfully, in bad faith, and intended to prevent the other side from examining evidence.[12] A default judgment is regarded as a sanction of last resort and granted only if no other sanction would be appropriate under the circumstances.[13]

---

7. Fam. Ct. Civ. R. 37(b)(2)(A-B)

8. Fam. Ct. Civ. R. 37(b)(2)(E)

9. *Beard Research, Inc. v. Kates*, 981 A.2d 1175, 1189 (Del.Ch.2009) (*citing Micron Tech., Inc. v. Rambus*, 255 F.R.D. 135, 148 (D.Del.2009)).

10. *Beard Research, Inc. v. Kates*, 981 A.2d 1175, 1189 (Del.Ch.2009) (*citing Positran Mfg., Inc. v. Diebold, Inc.*, 2003 WL 21104954, at *2 (D.Del. May 15, 2003)).

11. *Beard Research, Inc. v. Kates*, 981 A.2d 1175, 1189–90 (Del.Ch.2009).

12. *Beard Research, Inc. v. Kates*, 981 A.2d 1175, 1190 (Del.Ch.2009) (*citing Positran Mfg., Inc. v. Diebold, Inc.*, 2003 WL 21104954, at *2 (D.Del. May 15, 2003))

13. *Beard Research, Inc. v. Kates*, 981 A.2d 1175, 1190 (Del.Ch.2009) (*citing Baliotis v. McNeil*, 870 F.Supp. 1285, 1290 (M.D.Pa. 1994) and *Sundor Elec., Inc. v. E.J.T. Constr.*, 337 A.2d 651, 652 (Del.1975)).

█ The record does not support granting a default judgment in Wife's favor. Wife failed to show that Husband acted in bad faith in destroying documents from the filing cabinet. Additionally, Wife was able to obtain copies of her 1983, 1984, and 1985 individual income tax returns from her accountant (although, Wife was not able to obtain supporting documents for these returns that she alleges were in the filing cabinet). Therefore, Wife was not so severely prejudiced by Husband's destruction of documents that a default judgment is warranted. As discussed below, an adverse inference against husband is a more appropriate sanction. Accordingly, the Court will not grant Wife a default judgment barring Husband from alleging that Danberger Associates, Inc. is a marital asset.

█ The Court finds that the appropriate sanction for Husband's spoliation of evidence is an adverse inference that the documents which husband destroyed would have supported Wife's position that Danberger Associates, Inc. is traceable to premarital assets. In a case of intentional destruction of evidence, the Court may adopt a view of facts unfavorable to the wrongdoer as the known circumstances will reasonably admit.[14] An adverse inference is appropriate where a litigant intentionally or recklessly destroys evidence, when the litigant knows the item in question is relevant to a legal dispute or the litigant was otherwise under a legal duty to preserve the item.[15] Negligent destruction of evidence does not warrant drawing an adverse inference; rather, the Court must make a preliminary finding that the

party acted intentionally or recklessly in destroying evidence.[16] A party acts intentionally when they act with a known purpose. A party acts recklessly when they act with conscious disregard for the rights of others and the precise harm was reasonably apparent, but consciously ignored.[17] In *Beard Research, Inc. v. Kates,* the Court of Chancery concluded that in the case of evidence spoliation it is appropriate to draw an adverse inference when "an actor is under a duty to preserve evidence and takes part in the destruction of evidence while being consciously aware of a risk that he or she will cause or allow evidence to be spoiled ... and that risk would be deemed substantial and unjustifiable by a reasonable person." [18]

█ As discussed above, Husband was under a duty to preserve evidence when he and Wife separated. Additionally, Husband had an affirmative duty to preserve all marital property because of the automatic preliminary injunction pursuant to 13 *Del. C.* § 1509 that was in place when Wife filed a petition for divorce. There is no question that Husband destroyed documents that were potentially relevant to the pending ancillary litigation while he was under a duty to preserve such evidence. Husband's state of mind at the time he purged documents from the filing cabinet was either intentional or, at the very least, reckless. The fact that Husband knew of the automatic injunction barring the destruction marital property supports this conclusion. The Court finds that Husband acted with conscious disregard for the potential evidentiary value of the documents that he destroyed. The

---

14. *Equitable Trust Co. v. Gallagher,* 102 A.2d 538, 541 (Del.1954).

15. *Sears, Roebuck & Co. v. Midcap,* 893 A.2d 542, 552 (Del.2006).

16. *Id.*

17. *Jardel v. Hughes,* 523 A.2d 518, 530 (Del. 1987).

18. *Beard Research, Inc. v. Kates,* 981 A.2d 1175, 1192 (Del.Ch.2009)

Court does not find credibility in Husband's claim that he destroyed the documents because he needed more storage space or that he was concerned about identity theft. Additionally, the Court notes that the timing of the destruction of documents and the lack of notice to Wife are not favorable to Husband's position. If a party intentionally destroys evidence, it is reasonable to infer that the evidence was not favorable to that party.[19]

Accordingly, the Court shall find an adverse inference against Husband. Specifically, the Court finds that the evidence Husband spoliated would have supported Wife's contention that she was engaged in her current business venture prior to the parties' marriage, a position necessary if Wife is to establish her claim that her ownership of Danberger Associates, Inc., the current corporation, is to be excluded as a marital asset because it was acquired in exchange for premarital assets. The Court notes that an adverse inference is just that, a mere inference, and that Wife still bears the burden of proving that Danberger Associates, Inc. is traceable to premarital assets and not subject to equitable division. Additionally, Husband may rebut the adverse inference by presenting contradictory evidence which the Court shall consider as to the substantive issue of whether the current corporation, Danberger Associates, Inc., incorporated during the marriage, is directly and solely traceable to the premarital business venture of Wife and therefore not a marital asset.

 Wife's Motion for Sanctions requests attorneys' fees and costs associated with bringing this Motion. To impose monetary sanctions when there has been spoliation of evidence, the Court need only find that a party had a duty to preserve evidence and breached that duty.[20] A showing of negligence alone is sufficient to impose monetary sanctions.[21] Husband clearly breached his duty of care to preserve evidence and his duty to preserve marital property that arose pursuant to 13 *Del. C.* § 1509(a) when he destroyed documents from the filing cabinet after the parties were separated and divorced. Husband acted at the very least negligently, if not recklessly or intentionally, when he purged the documents from the filing cabinet without notice to Wife. Accordingly, Husband shall be responsible for Wife's attorneys' fees and Costs associated with bringing this Motion for Sanctions.

## CONCLUSION

For the reasons stated above Wife's Motion for Sanctions is granted in part and denied in part. The Court finds that Husband spoliated relevant evidence and that sanctions are appropriate. Wife's request for a default judgment is denied because the Court finds that an adverse inference is a more appropriate sanction. Wife's request for an adverse inference against Husband is granted. Specifically, the Court shall infer that the documents which were destroyed by Husband would have supported Wife's position that Danberger Associates, Inc. is traceable to a premarital asset of Wife. The Court shall apply this inference to the findings of fact when the Court considers corporate tracing of Danberger Associates, Inc. Finally, Wife's

**19.** *Sears, Roebuck & Co. v. Midcap,* 893 A.2d 542, 548 (Del.2006).

**20.** *Beard Research, Inc. v. Kates,* 981 A.2d 1175, 1194 (Del.Ch.2009).

**21.** *Id.*

request for attorneys' fees and costs associated with bringing the instant motion is granted. Wife shall submit to the Court an affidavit of fees and costs associated with bringing this Motion within twenty days to which Husband may file a response within twenty days thereafter.