# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, *ex rel.* Kathleen Jennings, Attorney General of the State of Delaware, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | C.A. No. N19C-05-323 FWW |
| CONCRETE TECHNOLOGY RESURFACING & DESIGN, INC., GUINEVERE M. KUNKEL, and PAUL E. RANDALL, | ) ) ) ) ) | |
| Defendants. | ) | |

Submitted: August 25, 2022
Decided:  October 10, 2022

*Upon Plaintiff State of Delaware's First Motion for Sanctions for Spoliation of Evidence,*
**GRANTED.**

*Upon Plaintiff State of Delaware's Second Motion for Sanctions for Spoliation of Evidence,*
**GRANTED.**

*Upon Plaintiff State of Delaware's Third Motion to Compel Discovery,*
**MOOT.**

## <u>MEMORANDUM OPINION AND ORDER</u>

Michael Clarke, Esquire, Deputy Attorney General, Consumer Protection Unit, DELAWARE DEPARTMENT OF JUSTICE, 820 North French Street, 5th Floor, Wilmington, DE 19801, Attorney for Plaintiff State of Delaware.

John v. Work, Esquire, LAW OFFICE OF JOHN V. WORK, 800 North King Street, Suite 303, Wilmington, DE 19801, Attorney for Defendants Concrete Technology Resurfacing & Design, Inc., Guinevere M. Kunkel, and Paul E. Randall.

**WHARTON, J.**

# I. INTRODUCTION

Plaintiff, the State of Delaware, *ex rel.* Kathleen Jennings, Attorney General of the State of Delaware ("State") initiated this action against Defendants Concrete Resurfacing Technology & Design, Inc. ("CTRD"), Guinevere M. Kunkel ("Kunkel") and Paul E. Randall ("Randall") (collectively "Defendants") alleging violations of Delaware's Consumer Fraud Act and Uniform Deceptive Trade Practices Act. The State alleges that CTRD, which was in the business of providing concrete resurfacing services, and its co-owners Kunkel and Randall: (1) misled consumers regarding thew nature of its services and its affiliation with a third-party manufacturer; (2) misrepresented that its projects were backed by a manufacturer's warranty; and (3) fraudulently substituted cheaper materials for the name-brand products it claimed to be using. The State seeks a cease and desist order, civil monetary penalties, disgorgement of profits, restitution, attorney fees, investigative costs, and pre- and post-judgment interest.

The Defendants answered and the Court entered a trial scheduling order, all in due course. Then, as discovery commenced, the case quickly went off track. The first hint of trouble was when a stipulated amended scheduling order was presented to the Court due to the Defendants' failure to respond to the State's first set of interrogatories and requests for production more than nine months after they were served. Then, the State's continued difficulty in securing relevant and necessary

discovery, including depositions of the individual defendants, resulted in multiple amendments to the trial scheduling order, three motions to compel discovery, and two motions for sanctions for spoliation of evidence. The Court held a hearing on the sanctions motions and the third motion to compel discovery.

The State's First Motion for Sanctions for Spoliation of Evidence ("First Motion") alleges that Kunkel and Randall dumped documents, including paper customer files, customer complaints, warranty documents, emails, and other discoverable information, into a large outdoor storage unit when the Defendants abandoned their business in Wilmington. At their depositions, they testified that when they returned to empty the unit six months later, they found it had been penetrated by rain and snow destroying much of its contents. As a result, they discarded virtually everything, including documents the State's alleges are critical to its case. In the State's view, this conduct was worse that reckless – it was intentional. As a result, the State asks the Court to enter a default judgment, or, alternatively, to strike the Defendant's defenses and order a trial on damagers only. At a minimum, the State asks for an adverse inference instruction.

The State's Second Motion for Sanctions for Spoliation and Discovery Abuse ("Second Motion") also seeks a default judgment based on new discovery abuse and newly demonstrated spoliation of evidence. The Second Motion is based on Kunkel's testimony that she withheld from the storage unit hardcopies of

customers' files within the last two years of CTRD's operations where the work was still under warranty. Those files were requested by the State in discovery, but were not produced, or if they were produced, they were embedded in an unsearchable 38 gigabyte hard drive. In the Second Motion the State asks for a default judgment and attorney fees.

The State's Third Motion to Compel Discovery ("Motion to Compel") seeks three things. The State wants the defendants to produce: (1) the materials Kunkel testified she withheld from the storage unit; (2) material Kunkel states she has been storing on a hard drive in her kitchen drawer; and (3) a letter Kunkel sent to CTRD's Delaware clients announcing that the company would be moving to New Jersey but would continue to service its Delaware clients.

After carefully considering the Motions, the testimony at the hearing, and the parties post-hearing submissions, the Court has determined that the Defendants recklessly engaged in spoliation of evidence. The Court also finds that defense counsel is largely to blame for the persistent failure of the Defendants to comply with the State's legitimate discovery requests, although the Defendants themselves also are significantly blameworthy. Accordingly, the Motions for Sanctions are **GRANTED.** The Court will not impose the most serious sanction of entering a default judgment at this juncture. Instead, it will deem certain disputed evidence related to the spoliated evidence established and/or preclude the defense from

5

introducing evidence related to the spoliated evidence. Additionally, the Court will give appropriate adverse inference instructions to the jury. The State's Third Motion to Compel Discovery is also **GRANTED.** The Court will award the State reasonable attorney's fees for the amount of time it has spent litigating two meritorious motions for sanctions.

## II. FACTS AND PROCEDURAL HISTORY.

The following facts are taken from the State's Complaint. CTRD is a defunct Delaware corporation, having been incorporated in 2003 and having operated in Delaware through 2014.[1] It has not declared bankruptcy or filed a certificate of dissolution.[2] Kunkel was the president and 50% owner of CTRD.[3] Randall was the vice president and owner of the other 50% of CTRD.[4] CTRD held itself out to customers as able to restore and repair a variety of concrete surfaces, including driveways, patios, decks, floors, and countertops, using what it claimed were products supplied by Concrete Technology, Inc. ("CTI"), a Florida corporation, for its resurfacing projects.[5] The Complaint alleges that CTRD violated Delaware's Consumer Fraud Act by engaging in misleading advertising in a variety of ways (Counts I, II, and III) as well as violating Delaware's Uniform Deceptive Trade

---

[1] Compl., at ⁋ 9, D.I. 1.
[2] *Id.,* at ⁋ 10.
[3] *Id.,.* at ⁋ 11.
[4] *Id.,* at ⁋ 12.
[5] *Id.,* at ⁋⁋ 15-17.

6

practices Act Counts IV, V, and VI).[6] The Defendants filed an Answer denying the State's allegations of wrongdoing and requesting that the Court dismiss the Complaint.[7]

On September 24, 2019, the Court issued a Trial Scheduling Order ("TSO"), setting trial for March 1, 2021.[8] The Court's docket details the following history of motion practice related to discovery. On June 17, 2020, the State submitted a stipulated motion to amend the TSO.[9] The stipulated reason necessitating an amendment to the TSO was the Defendants failure to respond to discovery requests made on September 13, 2019, nine months earlier.[10] Next, the State moved to compel discovery for the first time on July 2, 2020 because the Defendants had failed to respond to the State's discovery requests despite repeated promises by counsel that they would.[11] That motion was granted on August 26, 2020.[12] Responses purportedly were served in compliance with the Court's Order on September 11, 2020.[13] On October 10, 2020, the State submitted its second stipulated motion to amend the TSO because the responses were not provided in

---

[6] *Id.*
[7] Ans., D.I. 5.
[8] D.I. 11.
[9] D.I. 14.
[10] *Id.*
[11] D.I. 16.
[12] D.I. 18.
[13] D.I. 20.

fact until the State picked up a flash drive from defense counsel on September 28th.[14]

The third motion to amend the TSO was filed by the State on March 22, 2021.[15]

This motion was occasioned by a need to postpone the individual Defendants'

depositions due to deficiencies to the Defendants' document production.[16]  The

State filed its second motion to compel discovery on May 5, 2021 as a result of the

Defendants' failure to produce requested discovery responses despite a promise by

defense counsel to provide them.[17]  On May 28th, the Court held its second

scheduling teleconference and set a new trial date of March 21, 2022.[18]  On July 26,

2021, the Court granted the State's second motion to compel and directed the

Defendants to further respond to the State's first set of requests for production

within 10 days.[19]  On August 17, 2021 the State moved for a rule to show cause as

a result of the failure of the Defendants to comply with the Court's July 26th Order.[20]

On August 20th, the Defendants served their supplemental responses to the State's

first set of requests for production,[21] causing the State to withdraw its motion for a

rule to show cause.[22]  On September 13, 2021, the State submitted another stipulated

---

[14] D.I. 21.
[15] D.I. 23.
[16] *Id.*
[17] D.I. 33.
[18] D.I. 41.
[19] D.I. 48.
[20] D.I. 49.
[21] D.I. 51.
[22] D.I. 52.

amended TSO to allow for additional time to take the individual Defendants' depositions.[23]  The Court granted the motion on September 15th.[24]  On November 12, 2021, the State moved to amend the TSO as a result of what it described as it being "stonewalled" in its attempts to secure critical discovery from the Defendants.[25]  On December 6th, Defense counsel failed to appear for the scheduled presentation of the State's motion causing the Court to suspend the TSO then in place.[26]

It was at this point that the State filed two of the pending motions.  On December 9th, it filed its third motion to compel discovery[27] and its First Motion for Sanctions for Spoliation of Evidence.[28]  On December 14th, the Court held a teleconference at which it directed the Defendants to respond to the State's motions by December 31st.[29]  The Court also set a new trial date of July 5, 2022.[30]  On January 10, 2022, the State wrote to the Court requesting a status conference because the Defendants had not filed their responses to the State's motions by December 31st as ordered by the Court.[31]  The Court held a teleconference on

---

[23] D.I. 59
[24] D.I. 62.
[25] D.I. 68.
[26] D.I. 69.
[27] Pl.'s Third Mot. to Compel, D.I. 74.
[28] Pl.'s (First) Mot. for Sanctions, D.I. 75.
[29] D.I. 76.
[30] D.I. 77.
[31] D.I. 78.

January 19, 2022 and permitted the Defendants to file their response by noon the next day.[32] The responses were filed as ordered.[33] On February 15, 2022, the State filed the third motion now under consideration – its Second Motion for Sanctions for Spoliation of Evidence.[34] After as teleconference, the Court set a hearing date on the pending motions for April 22, 2022.[35]

On April 21, 2022, the State filed a March 17th letter it wrote to defense counsel.[36] In it the State stated that it was returning the hard drive the Defendants had provided because the State was concerned about reviewing "irrelevant, personal and privileged material."[37] The State also declined to do what it described as the Defendants' job of making a proper production for them.[38] The State further inquired whether Defendants intended to make a proper production of the hardcopy customer files Kunkel testified she withheld from the storage container. Apparently in response, on April 22nd, prior to the hearing, the Defendants filed a supplemental discovery response.[39] That response purported to produce a copy of a scanned "letter from New Castle Artisan to clients" which the Defendants claimed

---

[32] D.I. 81.
[33] D.I. 82 (Defs.' Resp. to Mot. for Sanctions); D.I. 83 (Defs.' Resp. to Mot. to Compel.).
[34] Pl.'s Second Mot. for Sanctions, D.I. 90.
[35] D.I. 94.
[36] D.I. 95.
[37] *Id.*
[38] *Id.*
[39] D.I. 97.

to have found in the hard drive it produced to the State which the State decline to review.[40] The production also stated that the Defendants had produced "all other relevant documents which remained in their possession."[41]

On April 22nd, the Court heard testimonial evidence from three witnesses on behalf of the State and also received 13 exhibits offered by the State.[42] During argument on the motions, a disagreement arose between counsel as to whether the Defendants had already produced the files Kunkel had testified she withheld from the storage unit and which the State was seeking. To resolve that dispute, the Court ordered defense counsel to reproduce to the Court what he produced to the State.[43] On April 25th, the Defendants produced to the Court their lease, advertising and contract materials, certain database entries, and seven customer contracts for six customers.[44] The same day, the State wrote to the Court disputing the adequacy of the Defendants' production, especially regarding the approximately 22 customers for whom the Defendants did work in 2013 and 2014 and whose files the State believes were withheld from the storage unit.[45]

---

[40] *Id.*
[41] *Id.*
[42] Tr. Evid. Hrg., Apr. 22, 2022, D.I. 105.
[43] *Id.,* at 98-100.
[44] D.I. 100-09.
[45] D.I. 111.

11

Following argument by counsel, the Court directed the parties to submit post-hearing briefs.[46] The State submitted its brief on May 13, 2022.[47] The Defendants filed their brief on June 3rd.[48]

On June 27th, the Court entered the current TSO.[49] Trial now is scheduled for January 17, 2023.[50] On July 6th, the State wrote to the Court advising it that the Defendants had not provided it with overdue discovery defense counsel had promised he would produce by June 21st during a teleconference with the Court.[51]

The Defendants served supplemental discovery responses on August 5th.[52] On August 18th, the Court directed the parties to advise the Court what effect, if any, those responses had on the State's Third Motion to Compel Discovery and its Second Motion for Sanctions.[53] The State's response details the Defendants' production and characterizes it as including some new, not particularly relevant documents responsive to the State's Request for Production, and other unresponsive and irrelevant documents.[54] Thus, it is the State's position that the August 5th

---

[46] *Id.,* at 101-03.
[47] D.I. 113.
[48] D.I. 116.
[49] D.I. 119.
[50] *Id.*
[51] D.I. 120.
[52] D.I. 125.
[53] D.I. 127.
[54] D.I 128.

12

production has no bearing on the pending motions.[55] The Defendants describe their latest production as including "promotional, business, and marketing materials sought by Plaintiff, documentation to associated and related business efforts of Defendants, photographs of various work done by defendants, and other documents which may be of use during defense at trial."[56] The Defendants maintain that they have provided "all information and documents still in their possession."[57] They do not address the Court's inquiry as to what effect this production has, if any, on the Second Motion for Sanctions and the Third Motion to Compel Discovery.[58]

With that procedural history, the Court turns to the facts necessary to resolve the pending motions for sanctions for spoliation of evidence. Those facts come principally from the individual Defendants' depositions and are not complex. Defendants Kunkel and Randall testified that they were forced on short notice to vacate their rented space at First State Plaza in Wilmington due to adverse financial circumstances.[59] Their landlord permitted them to use a large outdoor container at the back of the property for storage.[60] The Defendants put documents, including paper customer file folders, customer complaints, warranty documents, emails, and

---

[55] *Id.*
[56] D.I. 129.
[57] *Id.*
[58] *Id.*
[59] Pl.'s (First) Mot. for Sanctions, at 2, D.I. 75.
[60] *Id.*

other information into the container along with equipment, and other company property.[61] There was no log, and Kunkel described their actions as "simply heave ho-ing" materials into the container.[62] Kunkel testified that she withheld from the storage unit paper files for customers who had signed their contracts in 2013 and 2014 because those customers' jobs would still have been within CTRD's two-year warranty.[63]

The individual Defendants testified that in the spring of 2015, at least six months after they put the materials into the container, they returned to empty it.[64] They testified that rain and snow had penetrated the unit and destroyed or damaged much of the contents causing them to discard virtually everything, including all of the documents.[65]

## III.    THE PARTIES' CONTENTIONS.

In its First Motion for Sanctions, the State alleges that the Defendants intentionally destroyed critical documents despite being on notice of their legal duty to preserve them.[66] The First Motion cites a number of named customers who complained to the Better Business Bureau ("BBB"), to the Consumer Protection

---

[61] *Id.*
[62] *Id.,* at 3.
[63] *Id.*
[64] *Id.,* at 4.
[65] *Id.*
[66] Pl.'s (First) Mot. for Sanctions, at 17, D.I. 75.

Unit of the Delaware Department of Justice ("CPU"), and to the Defendants themselves.[67] The First Motion contends that, "despite having firsthand knowledge of numerous customer complaints – to the BBB, to the CPU, and to the Defendants themselves - [Kunkel and Randall] cast critical and relevant customer files into an outdoor storage bin and ignored them for at least six months, while they shut down their business in Delaware."[68] The State argues these actions were reckless, at least, but, when coupled with the defendants consistent refusal to provide discovery, were intentional in fact.[69] The State allowed at the evidentiary hearing that one could argue that placing the documents in a storage container was not evidence that the Defendants intended to destroy them.[70] But, at the very least the Defendants met the recklessness standard for spoliation when they failed to make a single effort to salvage anything upon returning to the container in the spring.[71] While maintaining that position in its post-hearing submission, the State argues strongly that in the context of this case, it was not the Defendants' intent to preserve the documents.[72] Instead, the Defendants planned to abandon their Delaware customers and move to New Jersey.[73] The State posits that the Defendants would have taken the documents

---

[67] *Id.,* at 9-16.
[68] *Id.,* at 5-6.
[69] *Id.*
[70] Tr. Evid. Hrg., Apr. 22, 2022, at 89, D.I. 115.
[71] *Id.*
[72] Pl.'s Mem. in Support of Mots. for Sanctions, at 5-9, D.I. 113.
[73] *Id.,* at 6-7.

back to New jersey if they intended to preserve them, just as Kunkel claimed she did with the files of customers whose work was still under warranty.[74]

The State's Second Motion for Sanctions alleges what it describes as the Defendants' continued misconduct since the Court held a status conference on January 19, 2022.[75] It claims newly demonstrated spoliation of evidence and discovery abuse.[76] In particular, the Second Motion focuses on files Kunkel claims she withheld from the storage container. The State represents that those documents do not appear to be included in an approximately 38 gigabyte flash drive the Defendants "dumped" on the State, nor have the Defendants explained what happened to those files.[77] The State references the Defendants' "history of dilatoriness in this litigation" and their "willfulness and bad faith in failing to provide discovery" and argues that nothing less than default would be a meaningful sanction.[78]

Based on Kunkel's deposition testimony, the State's Third Motion to Compel Discovery seeks: "(1) files that Defendant Kunkel avers that she withheld from the storage container; material the Defendant Kunkel states that she has been storing on a hard drive in her kitchen drawer; and (3) a letter that Defendant Kunkel claims to

---

[74] *Id.,* at 7.
[75] Pl.'s Second Mot. for Sanctions, D.I. 90.
[76] *Id.,* at 1.
[77] *Id.,* at 4.
[78] *Id.,* at 7.

have provided in discovery and that cuts to the heart of the issues in this case."[79]

The "letter" is the so-called "exciting news" letter that Kunkel testified went out to all current customers advising them that CTRD would be moving to New Jersey, but would continue to service them.[80] The State represents that none of these materials have been produced as of the date of the motion (December 9, 2021) despite defense counsel's repeated broken pledges to retrieve the hard drive, review it for production, and produce discoverable the materials on it.[81]

As noted, the Defendants did not respond to the State's First Motion for Sanctions and its Third Motion to Compel by December 31, 2021 as ordered by the Court.[82] Finally, after another conference with counsel, the Defendants responded to both motions on January 20, 2022.[83]

In response to the First Motion for Sanctions, the Defendants maintain that they did not intentionally or recklessly cause the destruction of evidence.[84] Instead, they argue that the undisputed fact that they placed the items in a storage container to which they intended to return refutes the conclusion that they intended the

---

[79] Pl.'s Third Mot. to Compel, at 2, D.I. 83.
[80] *Id.,* at 4.
[81] *Id,* at 2-3.
[82] D.I. 79.
[83] Defs.' Resp to Pl.'s Mot. for Sanctions, D.I. 82; Defs.' Resp. to Pl.'s Third Mot. to Compel, D.I. *3.
[84] Defs.' Resp. To Pl.'s Mot. for Sanctions, at 2-3, D.I. 82.

documents to be destroyed.[85]  Further, their actions were not reckless because they were unaware that the storage container was subject to leaking.[86]  Finally, they argue that the destroyed materials were not relevant to an existing legal dispute at the time of their destruction, nor did the Defendants have any duty to preserve them.[87]

The Defendants' Response to the State's Third Motion to Compel Discovery argues that while they may have been poor record keepers, their actions do not show that they are resisting the discovery process.[88]  With respect to the particular items the State seeks, the Defendants argue that items that were destroyed cannot be produced; the hard drive is in the possession of counsel and will be produced no later than January 21, 2022; and the "exciting news" letter would have been in documents already produced if they retained a copy.[89]

The State's Second Motion for Sanctions was filed on February 15, 2022.[90] The Defendants did not file a response to that motion.  Instead, the Court scheduled an evidentiary hearing on both motions for sanctions and the State's Third Motion

---

[85] *Id.*
[86] *Id.*
[87] *Id.,* at 3.
[88] Defs.' Resp to Pl.'s Third Mot. to Compel, at 1-2, D.I. 83.
[89] *Id.,* at 2-3.
[90] Pl.'s Second Mot. for Sanctions, D.I. 90.

18

to Compel Discovery.[91] At the hearing, the Defendants maintained that they have already produced everything they retained from the storage unit.[92]

In their post-hearing submission, the Defendants acknowledge that documents destroyed by water damage likely would have been relevant to this litigation, but they reiterate their position that they did not intentionally or recklessly destroy evidence.[93] They also dispute the State's argument that their failure to parse through the water damaged materials to attempt to salvage relevant documents is evidence of the ill intent necessary for spoliation.[94] Finally, on the issue of spoliation, the Defendants maintain that, if the Court were to impose sanctions for spoliation, the proper sanction would be appropriate adverse inference instructions.[95] Lastly, with respect to document production, defense counsel accepts responsibility for slow and delayed production, and for his failure to "properly record the mailing" of the Defendants' supplemental production.[96]

## IV. STANDARD AND SCOPE OF REVIEW

Sanctions for spoliation of evidence are appropriate "where a litigant intentionally or recklessly destroys evidence, when it knows that the item in

---

[91] D.I. 94.

[92] Tr. Evid. Hrg, Apr. 22, 2022, at 69-70.

[93] Defs.' Resp. to Pl.'s Mem. in Support of Mots. For Sanctions, D.I. 116.

[94] *Id.,* at 3-4.

[95] *Id.,* at 4.

[96] *Id.,* at 5.

19

question is relevant to a legal dispute or it was otherwise under a legal duty to preserve the item."[97]  Once the Court determines that spoliation has occurred, the Court looks to the following factors approved in *Minna v. Energy Coal S.p.A.*[98] to determine an appropriate sanction:

> (1)    the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternate sanctions; and (6) the meritoriousness of the claim or defense.[98]

"When faced with a motion to compel discovery, the Court determines whether the discovery sought is reasonably calculated to lead to admissible, non-privileged evidence."[99]  The scope of permissible discovery is "broad" and objections to discovery requests, in general, will not be allowed.[100]  The objecting party bears the burden to show why the information is improperly requested.[101]  Once an objection is lodged, "the party seeking the information must provide some minimal explanation as to why the discovery satisfies the requirements of relevance

---

[97] *Sears, Roebuck & Co. v. Midcap,* 893 A.2d 542, 552 (Del. 2006); *Foreman v. Two Farms,* 2018 WL 4846341 (Del. Super. Ct. 2018)

[98] 984 A.2d 1210, 1215 (Del. 2009).

[99] *Henlopen Hotel, Inc. v United National Ins. Co.,* 2019 WL 3384843 (Del. Super. Ct. July 26, 2019) (citing Del. Super. Ct. Civ. R. 26(b)(1)).

[100] *Id.,* (citing *Hunter v. Bogia,* 2015 WL 5050648, at *2 (Del. Super. Ct. July 29, 2015).

[101] *Id.*

and conditional admissibility."[102] Superior Court Civil Rules 16(f) and 37 authorize the Court to sanction a non-compliant party by: (1) requiring the party or attorney to pay the moving party "reasonable expenses in obtaining the order;"[103] (2) "deem[ing] the disputed facts to be established, prohibit[ing] the party from introducing evidence on the disputed facts, strik[ing] all or portions of the pleadings, or enter[ing] a default judgment against the disobedient party;[104] and (3) require[ing] the party or the attorney representing the party, or both, to pay the reasonable expenses on any noncompliance with [the ] the Rule" for failing to obey a scheduling order.[105] The trial court has discretion in selecting the appropriate sanction, but the sanction of dismissal should not be applied except as a last resort.[106] In exercising its discretion in choosing an appropriate sanction, the Court considers the same six factors it considers when imposing sanctions for spoliation of evidence.[107]

## V. DISCUSSION

**A.      The State's First Motion for Sanctions for Spoliation of Evidence.**

---

[102] *Id.*(citing *Hunter,* at *6, n.54).
[103] Super. Ct. C. R. 37(a)(4)(A).
[104] Super. Ct. C. R. 37(b)(2).
[105] Super. Ct. C. R. 16(f).
[106] *Drejka v. Hitchens Tire Service, Inc.* 15 A.3d 1221, at 1224 (Del. 2010).
[107] *Id.* (citing *Minna*, at 1215).

The State's First Motion for Sanctions concerns materials the Defendants put in the storage container when they lost their lease. Most of the facts are not in dispute. It appears that when the Defendants lost their lease and ceased Delaware operations they simply "heave ho-ed" documents, including paper file folders for each customer, customer complaints, warranty documents, emails, equipment, product, and other company property into an outside storage container.[108] Kunkel and Randall were in a rush and did not document, log, or otherwise inventory what they put in the container. It is obvious that relevant, discoverable materials were among the items the Defendants put into the container. When they returned to the container the next spring, the Defendants discovered that snow and rain had penetrated container causing extensive water damage to the contents. Instead of making any attempts to salvage any of the documents or materials relevant to their Delaware business, the Defendants simply discarded virtually everything, including all of the documents. There was no attempt made to salvage anything, nor did the Defendants make any effort to document what they discarded.

---

[108] Attached to the State's First Motion for Sanctions is a photograph of three virtually identical storage containers. The Court assumes one of them is the one into which the Defendants put the materials. The containers appear to be the type used for shipping on cargo vessels or on trains. Pl.'s (First) Mot. for Sanctions, at Ex. 1, D.I. 75.

Despite the Defendants' tepid contention to the contrary,[109] there is more than ample evidence in the record for the Court to conclude that the Defendants knew that documents they put in the storage container were relevant to legal disputes or that they were otherwise under a legal duty to preserve them. The First Motion for Sanctions identifies a number of customers who had complained to the BBB, to the CPU, and/or to the Defendants, and who either threatened or initiated legal action.[110] Notably, the Defendants were aware of most if not all of these complaints because they responded to them in one form or another.[111] Further, the First Motion for Sanctions identifies credible reasons to believe that documents related to these complaints were in the storage container.[112]

---

[109] *See,* Defs.' Resp. to Pl.'s Mot. for Sanctions, at 3-4, D.I. 82.

[110] Pl.'s (First) Motion for Sanctions, at 9-16, D.I. 75 (citing customers Joseph Crawley who complained to the BBB and the CPU; Charles Johnson who complained to the BBB and the CPU; William T. Johnson who complained Defendant Randall, CTRD, threatened legal action, and filed an action in JP Court, although the Defendants were unable to be served; Rosemary and John Peden who complained to CTRD and the CPU; Kim Calvetti who complained to the BBB, threatened legal action, and filed an action in JP Court; Velma Masto who complained to Defendant Randall in writing, copying the BBB, and directly to the BBB; Thomas Shrewsbury who complained to CTRD, saying he would complain to the BBB and consult an attorney; Bill and Donna Gunkel who complained to CTRD and the BBB; Irene Shestock who complained to CTRD; and Stephen Davis, whom Defendant Kunkel knew was an attorney, who complained to CTRD and threatened to escalate his complaint.)

[111] *Id.*

[112] *Id.*

All of the foregoing brings the Court to the most substantially controverted issue – the Defendants intent. The State claims the Defendants intentionally destroyed relevant documents, if not by the manner in which they discarded them, then certainly by their failure to make any salvage attempts after discovering the damage the snow and water damage had caused. The Defendants contend that they would not have put the documents in the container in the first place if they intended to destroy them. Further, since the documents were destroyed without ill intent, discarding the destroyed documents is immaterial to the Defendants intent.

In the spoliation context, Delaware courts have defined recklessness as a conscious awareness of the risk that one's action or inaction may cause evidence to be despoiled.[113] Intentional destruction means that the spoliator acted "with purpose."[114] The Court is not persuaded by the State's arguments that the Defendants *intentionally* destroyed discoverable materials. There were obvious options available to the Defendants to destroy the documents if that was their intent. Keeping them in a storage container was not one of them. *Contra* the State's contention, the Court finds that the Defendants' failure to take steps to preserve the

---

[113] *TR Investors, LLC v. Genger,* 2009 WL 4696062 at *1 (Del. Ch. Dec. 9, 2009) (citing *Beard Research v. Kates,* 981 A.2d 1175, 1192 (Del. Ch. May 29, 2009) ("Reckless conduct reflects a *knowing disregard* of a substantial and unjustifiable risk. It amounts to an 'I don't care attitude.'").
[114] *Id.,* at 1191.

24

documents does not demonstrate the same purposeful state of mind as affirmatively intending to destroy them. Nevertheless, the Court does conclude that the Defendants did act *recklessly*. It is difficult to imagine a clearer demonstration of an "I don't care attitude" than that demonstrated by the Defendants when they cavalierly "heave ho'ed" important documents relevant to legal disputes or that they otherwise were under a legal duty to preserve into an outdoor metal storage container. They made no record or log of the documents, and, apparently the files were not in any sort of cabinet or container which might have withstood the leaks that later occurred. The Defendants exacerbated their reckless behavior when, some six months later, after discovering that snow and rain had penetrated the storage container, they made no effort to salvage any potentially salvageable documents. Accordingly, the State's First Motion for Sanctions for Spoliation of Evidence is **GRANTED.**

> **B. The State's Second Motion for Sanctions for Spoliation of Evidence and Discovery Abuse.**

The State's Second Motion for Sanctions for Spoliation of Evidence and for Discovery Abuse addresses discoverable materials purportedly withheld from the storage container by Defendants. Specifically, the Motion recites that defendant Kunkel "testified, repeatedly, that she *withheld* from the storage container hardcopy files of customers within the last two years whose work was still within

25

warranty."[115] According to the State, none of these files, save one, have ever been produced.[116] In their response to the Court's inquiry concerning the Defendants' August production, the Defendants do not dispute that they have not produced the files purportedly withheld from the storage container.[117] They also advise the Court that they have provided all information and documents in their possession.[118] The Defendants do not attempt to reconcile Defendant Kunkel's previous testimony that she withheld files with their failure to produce those files. The files obviously existed at one time, but where they are now, or what happened to them is unknown.

Several hypothetical possibilities present themselves, all of which point to spoliation.[119] First, Defendant Kunkel either mistakenly or falsely testified that the files were withheld from the storage container when in fact they were among the documents put in the container. In that instance, the Court's determination that the defendants recklessly despoiled relevant, discoverable materials applies to these files as well. Second, the files were withheld from the container, but were lost

---

[115] Pl.'s Second Mot. for Sanctions, at 2, D.I. 90.

[116] *See,* D.I. 125.

[117] *See,* D.I. 129. In fact, the response does not speak directly to the question of whether the withheld files have been produced, but it does describe what was produced and the files are not identified in the description of the production. Nor do the Defendants contest the State's assertion that the files have not been produced.

[118] *Id.*

[119] The fact that the Court has identified certain hypothetical possibilities should not be taken as an expression of a conclusion by the Court that any one of them is the true explanation for the Defendants' failure to produce the files.

somehow or intentionally destroyed. In that instance, the Defendants either recklessly or intentionally despoiled the evidence. Finally, the files were not destroyed and remain in the Defendants' possession. In that instance, the Court would consider the failure to produce the files despoliation, at a minimum. Therefore, in the absence of any other explanation proffered by the Defendant's, the State's Second Motion for Sanctions and Discovery Abuse is **GRANTED.**

### C. The State's Third Motion to Compel Discovery.

The State's Third Motion to Compel Discovery seeks an order compelling the Defendants to "further respond to the State's First Requests for production of Documents Directed to Defendants."[120] In particular, the State seeks to compel production of: (1) the files that Defendant Kunkel testified she withheld from the storage container; (2) additional materials from a hard drive defendant Kunkel testified she kept in her home kitchen drawer; and (3) the so called "exciting news" letter sent to customers advising them that CTRD would be moving to New Jersey and that it would continue to service their warranties.[121] After considerable motion practice, a hearing, and a directive from the Court,[122] the Defendants served on the State supplemental discovery responses.[123] The Defendants maintain that they have

---

[120] Pl.'s Third Mot. to Compel, D.I. 74.
[121] *Id.*
[122] *See,* D.I. 124.
[123] D.I. 125.

no more information or documents in their possession.[124] The State represents that the August 5th production did not include what it considers the most important documents it seeks - the files purportedly withheld from the storage container.[125] Those files apparently are irretrievably missing. The Court considers the other materials that were produced in the August 5th supplemental production to have been produced in response to the State's Third Motion to Compel Discovery, rendering that motion **MOOT.**

## D. Sanctions.

The Court next turns to the imposition of appropriate sanctions. The State ask the Court to grant it a default judgment and award it attorney's fees for its motions. With respect to spoliation, the Court has considered the six *Minna* factors: (1) the extent of the Defendants' personal responsibility; (2) the prejudice to the State caused by the failure to meet scheduling orders and respond to discovery; (3) the Defendants' history of dilatoriness; (4) whether the Defendants' conduct was willful or in bad faith; (5) the effectiveness of sanctions other that dismissal after analyzing alternate sanctions; and (6) the meritoriousness of the defense.

---

[124] D.I. 129.
[125] D.I. 128.

First, the Defendants bear full individual responsibility for despoiling the evidence. The evidence was in their exclusive custody and control and it was their reckless actions or lack of action that resulted in depriving the State of material evidence to which it was entitled.

Second, the State has suffered considerable prejudice caused by the Defendants' failure to meet scheduling orders and deadlines as evidenced, for example, by the need to file two motions for sanctions and three motions to compel discovery. Additionally, depositions of the defendants were postponed due to untimely discovery production. The TSO had to be amended repeatedly due to the defense's inability to meet deadlines. Further, the manner in which the defense provided discovery was prejudicial to the State. Instead of responding to specific, itemized requests for production, the defense "dumped" an unedited hard drive on the State that contained irrelevant, personal, and privileged material. Finally, the spoliation of evidence has prejudiced the State in the presentation of its case. The State has been unable to obtain customer files (which include records of complaints, complaint dispositions, and warranty information), product records related to the State's allegation that the Defendants substituted inferior product for the brand

29

name product from CTI promised to customers, and bank records. The State deems these records "critical to the heart of [its] case" and "irreplaceable."[126]

Third, the extensive history of dilatoriness on the part of the Defendants and/or defense counsel is set out in Section II, above, and need not be repeated here.

Fourth, the Court makes no determination as to whether the conduct of the Defendants or defense counsel was willful or in bad faith. At a minimum, their conduct failed to meet the expectations the Court has for litigants and attorneys.

Fifth, sanctions other than default the Court has analyzed include: (1) monetary sanctions; (2) deeming the disputed facts to be established or prohibiting the defense from introducing evidence on the disputed facts; and (3) giving appropriate instructions to the jury that it should draw certain inferences adverse to the defense. Here, the Court finds that the extreme remedy of default can be avoided for now, and the defense can be effectively sanctioned, by a combination of all three of these lesser sanctions.

With respect to monetary sanctions, the Court orders the Defendants and/or defense counsel to pay the State's attorney's fees incurred in connection with litigating the State's First and Second Motions for Sanctions for Spoliation of Evidence. The Court directs the Defendants and defense counsel to attempt to

---

[126] Tr. Evid. Hrg., Apr. 22, 2022, at 93-97, D.I. 115.

apportion their respective responsibilities for the monetary sanction. Should the Defendants and defense counsel fail to agree on their respective portions of the defense's obligation for the State's attorney's fees, the Court will conduct a hearing after the case is resolved. The Court does not order attorney's fees in connection with the State's Third Motion to Compel Discovery because the Court deems that motion moot. By imposing monetary sanctions, the Court intends to deter future misbehavior by the defense and to compensate the State for its efforts in seeking sanctions.

As an additional sanction, the Court is prepared to deem certain contested facts related to the spoliated evidence to be established and/or to prevent the defense from introducing evidence on certain disputed facts related to the spoliated evidence. The Court also will give the jury appropriate adverse inference instructions related to the spoliated evidence. The parties are directed to meet and confer so as to submit with the pretrial stipulation: (1) a stipulation of facts deemed established and/or evidence the defense is precluded from introducing; and (2) proposed adverse inference jury instructions. If the parties are unable to agree on a stipulation of facts and adverse inference jury instructions, they shall submit their respective proposals along with the pretrial stipulation required by the TSO. In this way, the defense will be prevented from benefitting from its spoliation and the State will not be disadvantaged by it.

31

Sixth, the defense represents that its defense is twofold – first, that certain allegedly injured parties were out of warranty, both as to time and scope, and second, CTRD sought to remedy problems at every turn.[127] But it appears that the Defendants have caused any records that might support those defenses to be unavailable to the State for inspection and/or cross-examination of the Defendants.

## VI. CONCLUSION

**THEREFORE**, Plaintiff State of Delaware, *ex rel.* Kathleen Jennings, Attorney General of the State of Delaware's First and Second Motions for Sanctions for Spoliation of Evidence are **GRANTED**. The Court imposes the following sanctions against Defendants Concrete Technology Resurfacing & Design, Inc., Guinevere M. Kunkel, Paul E. Randall, and/or John V. Work, Esquire:

1. The Defendants, and/or John V. Work, Esquire shall pay the State its reasonable attorney's fees incurred in connection with litigating State's First and Second Motions for Sanctions for Spoliation of Evidence. The State shall submit the amount of attorney's fees it requests together with appropriate supporting information no later than 15 days from the date of this Order. The defense shall submit any objections to the State's request no later than 15 days after the State's submission.

---

[127] *Id.,* at 82.

2.     The Court will deem certain disputed evidence related to the spoliated evidence established and/or preclude the defense from introducing evidence related to the spoliated evidence after receiving submissions from the parties along with the pretrial stipulation.

3.     The Court will give the jury appropriate adverse inference instructions related to the spoliated evidence after receiving proposed instructions from the parties along with the pretrial stipulation.

4.     The State's Third motion to Compel Discovery is **MOOT.**

**IT IS SO ORDERED.**

*/s/ Ferris W. Wharton*
Ferris W. Wharton, J.